RECORD NO. 22-1339

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

NATHANIEL HICKS,

*Plaintiff – Appellee*,

v.

OFFICER GERALD L. FERREYRA, in his individual capacity;
OFFICER BRIAN A. PHILLIPS, in his individual capacity;

*Defendants – Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT
_____

BRIEF OF APPELLEE NATHANIEL HICKS
_____

Yiyang Wu
Gemma Donofrio
Relman Colfax PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036
(202) 728-1888
(202) 728-0848 (fax)

*Counsel for Appellee*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **NATHANIEL HICKS,** | ) | |
| | ) | |
| **Plaintiff/Appellee,** | ) | |
| | ) | |
| v. | ) | **No. 22-1339** |
| | ) | |
| **GERALD L. FERREYRA, ET AL.,** | ) | |
| | ) | |
| **Defendants/Appellants.** | ) | |
| | ) | |

## <u>DISCLOSURE STATEMENT</u>

Appellee Nathaniel Hicks is an individual suing in his personal capacity. No additional disclosure is necessary.


Dated: June 27, 2022

/s/ Yiyang Wu
Yiyang Wu
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036
Phone: (202) 728-1888
Fax: (202) 728-0848
ywu@relmanlaw.com

*Counsel for Appellee*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ..................................................................................1

ISSUES PRESENTED FOR REVIEW ...................................................2

STATEMENT OF THE CASE.................................................................3

    I.   Factual Background ..................................................................3

    II.   Procedural Posture...................................................................9

SUMMARY OF ARGUMENT ...............................................................11

ARGUMENT ......................................................................................13

    I.   Standard of Review ................................................................13

    II.   The District Court Correctly Held That Agent Hicks's Claim Is an Available Bivens Remedy Because There Is No Bivens Extension or Special Factor Counselling Hesitation ....................................14

        A. Legal Standard for Determining Whether a *Bivens* Remedy Is Available ..........................................................................15

        B. The District Court Correctly Found That This Case Does Not Present a *Bivens* Extension ...........................................17

        C. The District Court Correctly Found That, Even if This Case Presented a Bivens Extension, There Are No Special Factors Counseling Against Extending *Bivens*...........................................25

    III.   The District Court Properly Found That Appellants Are Not Entitled to Qualified Immunity ..................................................................30

        A. Appellants Violated Agent Hicks's Fourth Amendment Rights ...31

i

B.  Agent Hicks's Fourth Amendment Rights Were Clearly
    Established at the Time that Appellants Violated His Rights........32

IV.  The District Court Did Not Abuse Its Discretion in Sustaining the Jury's
     Compensatory and Punitive Damages Awards ........................................36

    A.  The Compensatory Damages Award Is Supported by the
        Substantial Evidence Presented During Trial ................................37

    B.  The Punitive Damages Award Is Not Excessive ...........................42

V.  The District Court Did Not Abuse Its Discretion in Permitting the
    Introduction of Indemnification Evidence After Appellants Opened the
    Door .................................................................................................................46

CONCLUSION ......................................................................................................54

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Ahmed v. Weyker*,
   984 F.3d 564 (8th Cir. 2020) ...............................................................24

*Annappareddy v. Pascale*,
   996 F.3d 120 (4th Cir. 2021) ..........................................................*passim*

*Arnold v. Eastern Air Lines, Inc.*,
   681 F.2d 186 (4th Cir. 1982) ...............................................................53

*Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors*,
   Inc., 99 F.3d 587 (4th Cir. 1996) .......................................................42

*Attkisson v. Holder*,
   925 F.3d 606 (4th Cir. 2019) .......................................................18, 24

*Belk, Inc. v. Meyer Corp., U.S.*,
   679 F.3d 146 (4th Cir. 2012), *as amended* (May 9, 2012) .................45

*Bibbs v. Nat'l Park Serv.*,
   No. 2:17-cv-3885, 2020 WL 476035 (W. Va. Jan. 3, 2020) .............24

*Bingman v. Baltimore Cnty.*,
   714 F. App'x 244 (4th Cir. 2017) .......................................................37

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ........................................................................*passim*

*Bivins v. Rodriguez*,
   No. 2:18-cv-2671, 2020 WL 134115 (E.D. Cal. Jan. 13, 2020) ........24

*Bristol Steel & Iron Works v. Bethlehem Steel Corp.*,
   41 F.3d 182 (4th Cir. 1994) ...............................................................13

*Cantu v. Moody*,
   933 F.3d 414 (5th Cir. 2019) ...............................................................24

*Carlson v. Green*,
   446 U.S. 14 (1980).............................................................................42

iii

*Christmas v. City of Chicago*,
    691 F. Supp. 2d 811 (N.D. Ill. 2010)................................................50

*CoreTel Virginia, LLC v. Verizon Virginia, LLC*,
    808 F.3d 978 (4th Cir. 2015) ......................................................51

*Covey v. Assessor of Ohio Cnty.*,
    777 F.3d 186 (4th Cir. 2015) ......................................................18

*Dallas v. Goldberg*,
    No. 95-cv-9076, 2002 WL 1013291 (S.D.N.Y. May 20, 2002)........................50

*Dennis v. Gen. Elec. Corp.*,
    762 F.2d 365 (4th Cir. 1985) ......................................................51

*Doe v. Meron*,
    929 F.3d 153 (4th Cir. 2019) ......................................................24

*E.E.O.C. v. Fed. Express Corp.*,
    513 F.3d 360 (4th Cir. 2008) ......................................................43

*Egbert v. Boule*,
    --- S. Ct. ----, No. 21-147, 2022 WL 2056291 (U.S. June 8, 2022) ............*passim*

*F.D.I.C. v. Bakkebo*,
    506 F.3d 286 (4th Cir. 2007) ..................................................13, 35

*Farah v. Weyker*,
    926 F.3d 492 (8th Cir. 2019) ......................................................24

*Fox v. Gen. Motors Corp.*,
    247 F.3d 169 (4th Cir. 2001) ......................................................37

*Halcomb v. Ravenell*,
    992 F.3d 316 (4th Cir. 2021) ..................................................32, 33

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020)........................................................16, 19, 21

*Hetzel v. Cnty. of Prince William*,
    89 F.3d 169 (4th Cir. 1996) ..................................................41, 42

*Hicks v. Ferreyra*,
  965 F.3d 302 (4th Cir. 2020) ......................................................*passim*

*Homesley v. Freightliner Corp.*,
  61 Fed. App'x. 105 (4th Cir. 2003) .................................................37

*Humbert v. Mayor & City Council of Baltimore City*,
  866 F.3d 546 (4th Cir. 2017), *as amended* (Aug. 22, 2017), *cert.
  denied sub. nom.*, 138 S. Ct. 3602 (2018) ..................................33, 35

*Illinois v. Caballes*,
  543 U.S. 405 (2005)........................................................................33

*Jacobs v. Alam*,
  915 F.3d 1028 (6th Cir. 2019) ..................................................16, 24

*Jones v. Allen*,
  No. PX-15-1173, 2016 WL 9443772 (D. Md. Oct. 24, 2016) ..........50

*Jones v. Southpeak Interactive Corp. of Delaware*,
  777 F.3d 658 (4th Cir. 2015) .....................................................37, 39

*Karkalas v. Marks*,
  Civ. No. 19-948, 2019 WL 3492232 (E.D. Pa. July 31, 2019) ........24

*Knussman v. Maryland*,
  272 F.3d 625 (2001)......................................................................*passim*

*Lindner v. Durham Hosiery Mills, Inc.*,
  761 F.2d 162 (4th Cir. 1985) ..........................................................13

*Martin v. Malhoyt*,
  830 F.2d 237 (D.C. Cir. 1987).....................................................18, 23

*McLeod v. Mickle*,
  765 F. App'x 582 (2d Cir. 2019) .....................................................23

*Medvedeva v. Kirkland*,
  No. C14-7RSL, 2015 WL 11233650 (W.D. Wash. Aug. 21, 2015) .................50

*Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*,
  264 F.R.D. 233 (W.D.N.C. 2010)....................................................52

*Pearson v. Callahan*,
   555 U.S. 223 (2009)......................................................................30

*Rivera v. Samilo*,
   370 F. Supp. 3d 362 (E.D.N.Y. 2019) ..........................................24

*Robinson v. Pilgram*,
   No. 20-cv-2965, 2021 WL 5987016 (D.D.C. Dec. 17, 2021) ..........24

*Rodriguez v. U.S.*,
   575 U.S. 348 (2015).......................................................................33

*Saunders v. Branch Banking and Tr. Co. of VA*,
   526 F.3d 142 (4th Cir. 2008) ........................................................45

*Stamathis v. Flying J, Inc.*,
   389 F.3d 429 (4th Cir. 2004) ........................................................13

*State Farm Mut. Auto Ins. Co. v. Campbell*,
   538 U.S. 408 (2003).......................................................................45

*Tun-Cos v. Perrotte*,
   922 F.3d 514 (4th Cir. 2019) .......................................20, 24, 25, 28

*TXO Prod. Corp. v. All. Res. Corp.*,
   509 U.S. 443 (1993).......................................................................45

*United States v. Baptiste*,
   596 F.3d 214 (4th Cir. 2010) ........................................................46

*Wallace v. Poulos*,
   861 F. Supp. 2d 587 (D. Md. 2012)...........................................49, 53

*Williams v. Strickland*,
   917 F.3d 763 (4th Cir. 2019) ........................................................35

*Wingate v. Fulford*,
   987 F.3d 299 (4th Cir. 2021) ........................................................30

*Young v. City of Council Bluffs, Iowa*,
   1:20-cv-30-JAJ, 2021 WL 6144745 (S.D. Iowa, Oct. 27, 2021) ......24

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)..........................................*passim*

**Statutes**

Md. Code Ann., Transp. § 21-1124.2(b)(2)(i) ........................................................7

**Other Authorities**

Fed. R. Civ. P. 50 ..............................................................................................13

Fed. R. Civ. P. 59 ..............................................................................................13

Fed. R. Civ. P. 61 ..............................................................................................46

U.S. Const. amend. IV ...............................................................................19, 31

**INTRODUCTION**

On July 9, 2021, following a four-day trial, a federal jury found that
Plaintiff-Appellee Nathaniel Hicks ("Appellee" or "Agent Hicks") established
beyond a preponderance of the evidence that Defendant-Appellants Gerald
Ferreyra and Brian Phillips ("Appellants" or "Officer Ferreyra and Officer
Phillips") violated his constitutional rights when they detained him on the side of a
Maryland highway—twice—without probable cause or reasonable suspicion. The
jury found in favor of Agent Hicks and against the two defendants and awarded
Agent Hicks $205,000 in compensatory damages and $525,000 in punitive
damages. The jury made an additional nine factual findings through responses to
special interrogatories that were designed to inform a finding on qualified
immunity on Agent Hicks's *Bivens* claim. On January 28, 2022, United States
District Court Judge Paul W. Grimm issued a comprehensive opinion denying
Defendants' post-trial motion and upholding the jury's verdict in its entirety.

Through this appeal, Appellants now seek to overturn the jury's verdict.
They ask this Court to reverse the district court's opinion affirming the verdict and
order judgment as a matter of law or, in the alternative, order a new trial on
damages. Appellants first argue that Agent Hicks does not have a cognizable
*Bivens* claim, even though there are no meaningful differences between his claim
and *Bivens*, and even though this Court already rejected this argument on

1

interlocutory appeal. Appellants also argue that they are entitled to qualified immunity, while failing to mention the nine special interrogatories and detailed trial testimony that make plain that their actions violated clearly established law. Appellants' argument regarding damages ignores the credible evidence presented by Agent Hicks in support of his damages, seeks to re-litigate facts of the case that have been contrarily decided by the jury, and minimizes the blunders their own counsel made in their closing argument. For these reasons, Appellee respectfully requests that the Court affirm the district court's post-trial decision.

## ISSUES PRESENTED FOR REVIEW

1. Did the district court err in denying Appellants' post-trial motion by ruling that Appellee's claim was not an extension of *Bivens*?

2. Did the district court err in denying Appellants' request for qualified immunity based on the jury's findings and the evidentiary record?

3. Did the district court abuse its discretion in denying Appellants' post-trial motion for new trial based on the evidentiary record regarding compensatory and punitive damages?

4. Did the district court abuse its discretion by permitting evidence to be introduced during Appellee's rebuttal argument once Appellants opened the door during their closing argument?

## STATEMENT OF THE CASE

### I.      Factual Background

At the time of these events, Appellee Nathaniel Hicks was an Agent with the United States Secret Service. Joint Appendix ("J.A.") at 101-2. Early in the morning on July 11, 2015, Agent Hicks parked on the shoulder of Maryland Route 295 North (the Baltimore-Washington Parkway). *Id.* at 103. Agent Hicks was preparing to join a government official's motorcade that was scheduled to pass the site within the hour. *Id.* at 113. He had his service weapon, a handgun, and official United States Secret Service credentials in the car with him. *Id.* at 108-09, 120-21. Agent Hicks's vehicle was government-assigned—a 2014 Chevrolet Impala—with a siren and police antenna on the back. *Id.* at 112-13.

At approximately 6 a.m., Appellant Gerald Ferreyra, an officer with the United States Park Police ("USPP"), saw Agent Hicks's parked car, parked his own police cruiser behind it, and approached to make contact. *Id.* at 404. Officer Ferreyra noticed a handgun located on the passenger's seat of Agent Hicks's vehicle. *Id.* at 421. Officer Ferreyra drew his weapon, after which Agent Hicks quickly identified himself as a Secret Service agent and explained that he was on duty, waiting to join a motorcade. *Id.* at 120, 423. Agent Hicks then displayed his credentials, which included a photograph and a description of his mission. *Id.* at

3

121-23, 423-24. Officer Ferreyra took possession of Agent Hicks's weapon and his credentials. *Id.* at 123, 424.

By Officer Ferreyra's own account, upon examination of Agent Hicks's credentials, Officer Ferreyra no longer suspected Agent Hicks of any criminal activity. *Id.* at 485. Officer Ferreyra was originally concerned that Agent Hicks did not lawfully possess the handgun, but he testified that concern dissipated once he looked at Agent Hicks's credentials and saw that they were valid and entitled him (as a law enforcement officer) to carry a weapon. *Id.* at 424, 430-31, 449-50; *see also id.* at 453. Officer Ferreyra also knew the law on constitutional seizures: he knew that it was unconstitutional to detain someone without cause. *Id.* at 454. Yet Officer Ferreyra did not release Agent Hicks.

To the contrary, Officer Ferreyra was annoyed, and he decided to call for additional officers to report to the scene. Appellant Brian Phillips, also an officer with the USPP, arrived shortly thereafter. *Id.* at 508. As a secondary officer on the scene, Officer Phillips also had full authority to detain or release Agent Hicks. *Id.* at 387. As soon as he arrived, Officer Phillips knew that Agent Hicks was not a suspect in a criminal matter—Officer Ferreyra told him as much when he made the call for additional officers. *Id.* at 535. Officer Phillips nevertheless chose to assist in Agent Hicks's continued detention: he ordered Agent Hicks to stay put, and when Agent Hicks asked to get out of his car, Officer Phillips told him he could

4

not. *Id.* at 130, 537. Officers Ferreyra and Phillips repeatedly told Agent Hicks that he was not allowed to "go[] anywhere" until the supervisor arrived. *Id.* at 129, 130, 537.

As Officers Ferreyra and Phillips continued to detain Agent Hicks, Officer Ferreyra called for a USPP supervisor. *Id.* at 425. Officer Ferreyra claimed at trial that he detained Agent Hicks pursuant to a USPP custom or policy requiring that USPP officers must detain a person until a supervisor arrives to resolve disagreements over gun displays. *Id.* at 476. This was the only reason offered by Appellants to explain why they continued to seize Agent Hicks (in other words, they did not claim that they needed to continue investigating or that they had any other ground to suspect illegal behavior). However, the jury specifically found that Officer Ferreyra was not following any USPP policy and that both officers' actions that day were not reasonable. *Id.* at 807 (Special Verdict ("S.V.") 4).

As Agent Hicks sat in his car, not free to leave, the USPP officers began to taunt him. After Agent Hicks identified himself as a Secret Service Agent and gave Officer Ferreyra his credentials, Officer Ferreyra continued to point his gun at Agent Hicks. Officer Ferreyra repeatedly cursed at him, telling him to shut the "f" up and that he was not a "f'ing rookie." *Id.* at 126-27; *see also id.* at 126 ("He indicated that that was going to be one motorcade that I was not going to be participating in."). Officer Phillips taunted him, too, telling him he was in the

"Park Police district" and making fun of the fact that Officer Ferreyra took his gun. *Id.* at 130, 132. Throughout the encounter, Agent Hicks feared for his life. *Id.* at 145.

The motorcade that Agent Hicks had been assigned to lead came and passed. *Id.* at 133, 243. Because Appellants continued to detain him, the motorcade left without Agent Hicks to lead it. *Id.* at 134. And when the motorcade passed, one of the Agents in the motorcade saw Officer Phillips give a taunting hand wave toward the motorcade. *Id.* at 245-46.

At some point after the motorcade passed, Appellants' supervisor arrived at the location. *Id.* at 134. The supervisor ultimately told Agent Hicks that he could leave, and Officer Ferreyra finally returned Agent Hicks's weapon and credentials to him and allowed him to drive away. *Id.* at 137-38. Altogether, Appellants detained Agent Hicks for approximately an hour after confirming that he was a Secret Service Agent. *Id.* at 137.

Within minutes of having his property returned to him and driving off, Agent Hicks was stopped again, this time by Officer Phillips. *Id.* at 140. Agent Hicks had not been driving erratically, nor had he done anything else to warrant being stopped for a second time. *Id.* at 140-41, 808 (S.V. 7).

Officer Phillips knew that it was Agent Hicks's vehicle prior to pulling him over. *Id.* at 808 (S.V. 8). Approaching the car, Officer Phillips immediately told

6

Agent Hicks that he was being "mouthy." *Id.* at 140-41, 298. He also said to Agent Hicks that he noticed that when Agent Hicks left the scene, Agent Hicks was "on the cell phone[,] and it was against the law in the state of Maryland to be driving while talking on a cell phone." *Id.* at 140. (In fact, Maryland law provides the opposite, and expressly allows law enforcement officers to use their cell phones while driving. Md. Code Ann., Transp. § 21-1124.2(b)(2)(i).). Despite knowing that it was Agent Hicks he was pulling over, recognizing him when he approached the car, and being fully aware that Agent Hicks was an on-duty Secret Service Agent, Officer Phillips demanded Agent Hicks's license and registration and detained him further before ultimately releasing him. J.A. at 140-42.

Appellants' conduct—harassing and demeaning Agent Hicks, cursing at him, continuing to point a gun at him after he had provided his credentials, detaining him longer than needed, and then stopping him a second time—caused Agent Hicks great emotional distress. *Id.* at 145-152. Appellants' repeated cursing, taunting, and aggression made Agent Hicks feel "belittled" and "upset and scared." *Id.* at 145-46; *see also id.* at 141. Agent Hicks's fear was compounded by Officer Ferreyra's refusal to lower his gun after Agent Hicks had provided his credentials; he was not sure what Officer Ferreyra would do, and braced himself for the possibility that he could be shot. *Id.* at 145. Agent Hicks also felt "alone" and "completely helpless" as an "African-American male that was surrounded by all

7

Caucasian officers" when the motorcade passed him. *Id.* Appellants' conduct prevented Agent Hicks from completing a work assignment for the first and only time in his twenty-year career, which had been a significant source of pride for him. *Id.* at 144.

Appellants' unconstitutional conduct continued to affect Agent Hicks long after the encounters. During trial, Agent Hicks (and several other Secret Service Agents) gave testimony about the emotional distress that Agent Hicks suffered as a result of Appellants' actions. *See, e.g.*, *id.* at 145-51, 308-09. Agent Hicks cried about the incident; he had previously only cried two other times in his entire adult life. *Id.* at 146. He had difficulty sleeping, *id.* at 151, and even after he returned to work, he continued to feel "withdrawn" and "ostracized from [his] co-workers and friends." *Id.* at 147.

Appellants' conduct also negatively affected Agent Hicks's relationship with his family, and he became distant and impatient toward them. *Id.* at 149. In fact, Agent Hicks's behavior changed so much that, after discussing it with his wife, he

decided to seek professional help. *Id.* As a result of this incident, Agent Hicks

sought and received therapy for the first time in his life. *Id.* at 150.[1]

## II.    Procedural Posture

Agent Hicks filed suit against Appellants on July 8, 2016, as authorized by

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388

(1971), alleging that Appellants violated his Fourth Amendment rights by seizing

him twice without probable cause or reasonable suspicion. J.A. at 3 (Dkt. No. 1).

On December 9, 2016, Appellants filed a partial motion to dismiss, and the district

court denied Appellants' motion on April 11, 2017. *Id.* at 6 (Dkt. No. 37, 44). On

---

[1] Appellants' statement of fact includes factual inaccuracies that were rejected by
the jury or are otherwise contradicted by the record. *Compare, e.g.*, Brief of
Appellants (App. Dkt. No. 17) ("App. Br.") at 7, para. 5 ("Ofc. Ferreyra observed
Appellee awake and reach for a weapon"), *with* J.A. at 808 (jury finding that "it
[did not] appear to Officer Ferreyra that Agent Hicks reached for the gun");
*compare, e.g.*, App. Br. at 7, para. 6 (Agent Hicks "handed Ofc. Ferreyra his
credentials, at which point Ofc. Ferreyra holstered his own weapon,"), *with* J.A. at
125 (Officer Ferreyra continued to point the gun even after he took Agent Hicks's
credentials); *compare, e.g.*, App. Br. at 9, para. 11("[During trial,] it was implied
that in a complicated and very unusual scene like this encounter involving different
agencies, for the various supervisors to speak and clear up the situation"), *with* J.A.
at 807 (jury finding that "Officer Ferreyra [was not] following a customary
practice within the USPP when he requested a supervisor's presence on the
scene"); *compare, e.g.*, App. Br. at 10, at para. 13 (Officer Phillips did not realize
he had pulled Agent Hicks over until the stop occurred), *with* J.A. at 808 (jury
finding that Officer Phillips "realized it was Agent Hicks driving the vehicle prior
to pulling the vehicle over").

9

November 13, 2018, after the close of discovery, Appellants moved for summary judgment. *Id.* at 8 (Dkt. No. 78). The district court denied in part Appellants' motion for summary judgment, finding that Appellants had not satisfied their burden of establishing an entitlement to qualified immunity. *Id.* at 8 (Dkt. No. 87). Appellants moved for interlocutory appeal of this decision. *Id.* (Dkt. No. 88).

On July 14, 2020, in a published decision, this Court found that Appellants' *Bivens* argument was forfeited on appeal because Appellants never argued that Agent Hicks lacked a cause of action under *Bivens*. *Id.* at 9 (Dkt. No. 99); *Hicks v. Ferreyra*, 965 F.3d 302 (4th Cir. 2020). It further noted that this case did not appear to represent an extension of *Bivens*. *Id.* at 310-11. This Court also dismissed Appellants' request for a review of the qualified immunity decision for lack of jurisdiction. *Id.* at 313.

The case was tried before a jury between July 6 and July 9, 2021. J.A. at 60-799. The jury returned a verdict on July 9, 2021, in which they found fully in favor of Agent Hicks. The jury found that both officers violated Agent Hicks's Fourth Amendment rights during the first encounter, and that Officer Phillips acted unconstitutionally during the second encounter. The jury awarded $80,000 in compensatory damages against Officer Ferreyra; $225,000 in punitive damages against Officer Ferreyra; $125,000 in compensatory damages against Officer Phillips; and $300,000 in punitive damages against Officer Phillips. *See Id.* at 806-

10

07. The jury made nine additional factual findings through responses to special interrogatories. These findings can be found on pages 807-08 of the Joint Appendix; *see also id.* at 787-793.

On September 3, 2021, following the favorable verdict by the jury, Officers Ferreyra and Phillips filed an Omnibus Post-Trial Motion, J.A. at 13 (Dkt. No. 165), which Agent Hicks opposed. *Id.* at 13 (Dkt. No. 168). On January 28, 2022, the District Court denied Appellants' post-trial motion in its entirety, entering judgment for Agent Hicks. *Id.* at 804-41. Appellants filed a timely notice of the instant appeal. *Id.* at 14 (Dkt. No. 177).

## SUMMARY OF ARGUMENT

The district court correctly affirmed the jury's verdict and denied Appellants' post-trial motion. Its decision was supported by a comprehensive review of the trial record and court precedent, and should be affirmed by this Court.

First, Agent Hicks continues to have a cognizable *Bivens* claim under Supreme Court precedent. Appellants have fixated on *Abbasi* and its hesitance to extend *Bivens* to new circumstances, but that does not apply to Agent Hicks's claims. As this Court recognized when Appellants raised this on interlocutory appeal, "along every dimension the Supreme Court has identified as relevant to the inquiry, this case appears to represent not an extension of *Bivens* so much as a

11

replay." *Hicks*, 965 F.3d at 311. The Court's inquiry should stop there, but if it chooses to analyze special factors counseling hesitation, it will find that none exist.

Second, Appellants are not entitled to qualified immunity. The jury found that Appellants violated Agent Hicks's constitutional rights, and the district court concluded that the law was clearly established at the time of the incident. Appellants' arguments ignore the nine special interrogatories the jury answered to assist with the district court's determination of qualified immunity.

Third, the district court did not abuse its discretion in affirming the jury's verdict. The trial record contains ample evidence in support of the jury's compensatory and punitive damages verdict, including that Agent Hicks identified numerous specific harms he suffered, sought medical treatment, introduced corroborative testimony from witnesses, and elicited that Appellants' conduct was reprehensible. The district court found the multiple witnesses' testimony on damages credible.

Finally, the district court did not abuse its discretion in allowing Agent Hicks to introduce rebuttal evidence regarding indemnification. Appellants opened the door by making multiple references in their closing argument to their personal risk of paying a verdict. It was well within the district court's discretion to allow this rebuttal evidence, Appellants did not properly object during the trial, and there is no evidence of prejudicial error.

12

# ARGUMENT

## I.    Standard of Review

Appellants have moved for judgment as a matter of law under Federal Rule of Civil Procedure 50, and for a new trial under Federal Rule of Civil Procedure 59(b) on damages only.

The Fourth Circuit reviews a district court's denial of a motion for judgment as a matter of law *de novo*, viewing "the evidence in the light most favorable to the prevailing party, [and] assessing whether there was a legally sufficient evidentiary basis for a reasonable jury to find for that party." *F.D.I.C. v. Bakkebo*, 506 F.3d 286, 294 (4th Cir. 2007). If "reasonable minds could differ about the verdict," the court is "obliged to affirm the ruling of the district court." *Id.*

"The decision to grant or deny a new trial [under Fed. R. Civ. P. 59] rests with the sound discretion of the district court," and the Fourth Circuit reviews this decision "for a clear abuse of discretion." *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994). The district court's decision to deny a motion for a new trial "is not reviewable upon appeal, save in the most exceptional circumstances." *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 168 (4th Cir. 1985). A district court's denial of a request for a remittitur also "rests with the sound discretion of the trial judge and will not be reversed absent an abuse of discretion." *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004).

II.     **The District Court Correctly Held That Agent Hicks's Claim Is an Available *Bivens* Remedy Because There Is No *Bivens* Extension or Special Factor Counselling Hesitation.**

Appellants first argue that Agent Hicks's case should be dismissed because it is not cognizable under *Bivens*. App. Br. at 14. But Agent Hicks alleged—and a jury found—that his constitutional rights were violated when Appellants, line-level federal law enforcement officers, came upon Agent Hicks while he sat in his car and detained him even though they knew they had no legitimate basis for doing so. Agent Hicks's case presents a classic *Bivens* scenario that is no different from hosts of other *Bivens* claims that courts have consistently recognized.

Appellants' argument to the contrary failed when they raised it to the Fourth Circuit on interlocutory appeal, and it fails again now. On interlocutory appeal, this Court rejected Appellants' *Bivens* argument in this manner:

> [A]long every dimension the Supreme Court has identified as relevant to the inquiry, <u>this case appears to represent not an extension of *Bivens* so much as a replay</u>: Just as in *Bivens*, Hicks seeks to hold accountable line-level agents of a federal criminal law enforcement agency, for violations of the Fourth Amendment, committed in the course of a routine law-enforcement action.

*Hicks*, 965 F.3d at 311 (emphasis added).[2] There is nothing about the trial record, or intervening case law, that should cause the Court to depart from its prior conclusion. Appellants' Motion should be denied.

### A.    Legal Standard for Determining Whether a *Bivens* Remedy Is Available

In *Bivens*, the Supreme Court authorized an implied cause of action for a damages suit arising from allegations that line-level agents of a federal criminal law enforcement agency seized the plaintiff without justifiable cause, among other violations of the Fourth Amendment. 403 U.S. at 390, 397. Because *Bivens* is a judicially created remedy, the Supreme Court has only recognized the doctrine for cases along the lines of *Bivens* (like this one) and for two other constitutional violations not relevant here. *See Annappareddy v. Pascale*, 996 F.3d 120, 133 (4th Cir. 2021) (citing *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); *Carlson v. Green*, 446 U.S. 14, 17-19 (1980)). Since then, the Court has declined to extend

---

[2] Although the Fourth Circuit concluded that Appellants waived their *Bivens* extension argument, part of this analysis required deciding whether there would be a "denial of fundamental justice" if it found waiver. *Hicks*, 965 F.3d at 311. The Court observed that this case was a "replay" of *Bivens* involving allegations to which "courts regularly apply *Bivens*," *id.* at 311, and therefore held that "enforcing [its] standard forfeiture rule works no fundamental injustice." *Id.* at 312.

the cause of action to other new contexts or categories of defendants. *Abbasi*, 137 S. Ct. at 1854-55.

That is not to say that *Bivens* itself is no longer cognizable: just that courts must adhere to Supreme Court precedent in deciding whether to establish a <u>new</u> category of claims. In *Abbasi*, the Supreme Court clarified the framework for determining whether a *Bivens* claim is available for a particular case. 137 S. Ct. at 1859-60. The first, fundamental inquiry is whether the case at issue presents a new *Bivens* context—that is, whether it differs in a meaningful way from the violation in *Bivens* and the other two permissible constitutional violations. *Id.* If the context is not new, a *Bivens* remedy remains available for the plaintiff, and the inquiry stops there. *Id.*; *see also Jacobs v. Alam*, 915 F.3d 1028, 1038 (6th Cir. 2019). But, if the context is new, then the Court must decide whether to extend *Bivens* to include that type of context. This second analysis evaluates whether there are any "special factors counselling hesitation" against extending *Bivens* liability to that new context. *Abbasi*, 137 S. Ct. at 1857.

Recent Supreme Court precedent confirms this analytical framework. *See Egbert v. Boule*, --- S. Ct. ----, No. 21-147, 2022 WL 2056291 (U.S. June 8, 2022); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). In *Egbert*, the Supreme Court again reiterated that the inquiry proceeds in two steps, "[first,] is it 'meaningful[ly]' different from the three cases in which the Court has implied a

16

damages action. Second, if a claim arises in a new context, a *Bivens* remedy is

unavailable if there are 'special factors' indicating that the Judiciary is at least

arguably less equipped than Congress to 'weigh the costs and benefits of allowing

a damages action to proceed.'" 2022 WL 2056291, at \*6 (quoting *Abbasi*, 137 S.

Ct. at 1858). The Court emphasized the import of discussing "whether there is any

reason to think that Congress might be better equipped to create a damages

remedy" in the context at issue, since, as a practical matter, its previous cases had

been decided on that question, but it proceeded to review the case through the two-

part *Abbasi* framework, noting the Ninth Circuit's finding that the plaintiff's case

was a new *Bivens* context and then moving onward to the special factors analysis.

*Id.* at \*7.

Here, as the district court (and the Court of Appeals) has correctly found,

this case does not present a new *Bivens* context. Under *Abbasi* and its progeny, the

inquiry should end there. Even if it were necessary for the Court to move to the

second step of the *Abbasi* analysis, there are no special factors counselling against

permitting the jury's *Bivens* verdict to stand.

### B.    The District Court Correctly Found That This Case Does Not Present a *Bivens* Extension.

The first, fundamental question is whether the case at hand presents a new

*Bivens* context (here, *Bivens* itself). *Bivens* has been described by the Fourth

Circuit as "finding remedy for Fourth Amendment violation related to use of

17

unreasonable force during warrantless search and seizure." *Annappareddy*, 996

F.3d at 133. That is identical to what Agent Hicks confronted here. Indeed, as the

Fourth Circuit recognized on interlocutory appeal, along "every dimension" this

case is the same as the cause of action the Supreme Court recognized in *Bivens*.

*Hicks*, 965 F.3d at 311. The inquiry ends here, and Appellants' arguments to the

contrary are unavailing.

To determine if a case differs in a "meaningful" way from prior *Bivens*

cases, courts consider the following: (1) "the rank of the officers involved;" (2)

"the constitutional right at issue;" (3) "the statutory or other legal mandate under

which the officer was operating;" (4) "the generality or specificity of the official

action;" (5) "the extent of judicial guidance as to how an officer should respond to

the problem or emergency to be confronted;" and (6) "the risk of disruptive

intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 137 S.

Ct. at 1860. The district court correctly found that <u>all</u> of these factors weigh in

favor of Agent Hicks.

<u>First</u>, like the officers in *Bivens*, Appellants are rank-and-file police officers,

not high-level federal officials. J.A. at 817; *compare Covey v. Assessor of Ohio

Cnty.*, 777 F.3d 186, 198 (4th Cir. 2015) (cognizable *Bivens* claim against Drug

Enforcement Agency agent), *and Martin v. Malhoyt*, 830 F.2d 237, 263 (D.C. Cir.

1987) (cognizable *Bivens* claim against USPP officer), *with Attkisson v. Holder*,

925 F.3d 606, 621 (4th Cir. 2019) (claims differed meaningfully from *Bivens* because "Holder and Donahoe held much higher ranks than the line-level FBI agents sued in *Bivens*"). This Court's recent instruction in *Annappareddy* that "as in *Bivens*, the plaintiff seeks to hold accountable only line-level investigative officers, not high-ranking officials," is dispositive on this factor. 996 F.3d at 135.

Second, just like *Bivens*, the jury found that Appellants violated Agent Hicks's right to be free from unreasonable warrantless searches and seizures under the Fourth Amendment. J.A. at 817. Courts have repeatedly compared the facts of *Bivens* against the facts of the case at this level of specificity. In *Annappareddy*, this Court considered a plaintiff's allegation that police officers' search was unlawful even though they had obtained a warrant beforehand. 996 F.3d at 135. The Court held that the constitutional claim in *Bivens* was "unreasonable warrantless searches and seizures," such that with-warrant searches departed from that context. *Id.* It reasoned that with-warrant searches implicated a "distinct Fourth Amendment guarantee – that 'no Warrants shall issue, but upon probable cause,'" and that the case law "sharply distinguishes" between with-warrant and warrantless searches. *Id.* (quoting U.S. Const. amend. IV); *see also Hernandez*, 140 S. Ct. at 744 (stating that there is "a world of difference between" the right in *Bivens* and "petitioners' cross-border shooting claims" at issue there).

Applying *Annappareddy*, the constitutional right at issue for Agent Hicks is the same as it was in *Bivens*: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Appellants, however, read this factor so narrowly as to require not only that the constitutional right be the same but also that the fact pattern must mirror that in *Bivens*. *See* App. Br., at 19-20 (arguing that the district court erred because it did not consider that Agent Hicks "was allowed to keep his car keys and cell phones in his vehicle with him at all times;" that he "was not handcuffed"; and that "supervisor[s] spoke . . . to clear up the situation."). None of these are meaningful distinctions. Fourth Amendment jurisprudence remains the same regardless of those facts; Agent Hicks's constitutional guarantee remains the same, as well.

The <u>third</u> factor, the statutory or other legal mandate under which Appellants were operating, weighs in Agent Hicks's favor. As the district court found, there is no question that Appellants were operating under criminal law, J.A. at 818; even Appellants must concede this, *see* App. Br. at 21. *Cf. Tun-Cos v. Perrotte,* 922 F.3d 514, 521 (4th Cir. 2019) (noting that "enforcement of the immigration laws implicates broad policy concerns distinct from the enforcement of criminal law").

<u>Fourth</u>, like the plaintiff in *Bivens*, Agent Hicks has challenged a specific, not general, action. J.A. at 818; *see also Tun-Cos*, 922 F.3d at 527 (extension of

20

*Bivens* because, instead of individual officers' specific actions, plaintiffs' complaint "specifically targeted the Trump Administration's immigration enforcement policy with the purpose of altering it"); *see also Abbasi*, 137 S. Ct. at 1860 (analysis is whether "claims would call into question the formulation and implementation of a general policy"). Here, Agent Hicks's allegations are limited to discrete actions taken by Officers Ferreyra and Phillips. Agent Hicks did not raise any USPP policies at trial and did not claim that any USPP policy was implicated by Appellants' actions. (If anything, it was Appellants who raised that they acted in accordance with a USPP policy, but this defense was rejected by the jury. *See* J.A. at 807 (S.V. 4.)).

Fifth, *Abbasi* directs courts to consider whether an officer has sufficient "judicial guidance as to how an officer should respond to the problem or emergency to be confronted." *Abbasi*, 137 S. Ct. at 1860. Here, Appellants both admitted that they knew it was illegal to detain someone without cause. J.A. at 454, 532. And, as discussed *infra* Section III, the district court correctly found that Appellants' actions in detaining Agent Hicks violated clearly established law, which makes clear that they had adequate prior judicial guidance.

Sixth, there is absolutely no risk of any unwarranted, disruptive intrusion on future decision-making by any other branch of government. J.A. at 819-20. This important factor weighs heavily in Agent Hicks's favor. *See Egbert*, 2022 WL

21

2056291, at *6 (*Bivens* claim at the international border implicates risk of judicial

disruption because Congress is best suited to make international decisions); *see*

*also Hernandez*, 140 S. Ct. at 735 (same for cross-border shooting). In *Abbasi*, the

Court explains this factor as a reluctance "'to intrude upon the authority of the

Executive in military and national security affairs.'" 137 S. Ct. at 1861 (quoting

*Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)). But this case concerns a routine

enforcement of criminal law, as applied to a United States citizen, on the side of

the Baltimore-Washington Parkway. Nor does it implicate any highly sensitive

area of specialized law or policy considerations. As discussed *infra* Section II.C,

Appellants' arguments on this factor fail. The district court put it best: "this case

does not require me to delve into either department's policies and procedures or

analyze sensitive areas of specialized law. Rather, it is a straightforward case of

routine search and seizure law." J.A. at 820.

Appellants concede two of the six factors identified in *Abbasi*, ignore two

others, and barely engage with the remainder. *See* App. Br. at 17-18 (conceding

factor 1), 21 (conceding factor 3); *see also id.* at 17-26 (ignoring factors 4 and 5).

Instead, they attempt to persuade the Court that the facts surrounding Agent

Hicks's detention are so unique as to warrant a finding of a *Bivens* extension. *See*

App. Br. at 23-26 (reiterating Appellants' theory of the case as they presented it to

the jury). Setting aside that it is wholly improper to rely on a version of facts that

22

the jury has already rejected, *see supra* p. 9 n.1, Appellants' arguments fail as a

matter of law. The appropriate inquiry is whether the "case is different in a

<u>meaningful</u> way," *Abbasi,* 137 S. Ct. at 1859 (emphasis added), and "meaningful"

differences are those that rise to the level of the six factors described in *Abbasi,* all

of which weigh in Plaintiff's favor. *Id.* at 1859-60*; cf. Egbert*, 2022 WL 2056291,

at *8 (cautioning, in the special-factors analysis, against applying inquiry at "too

granular a level" and relying on "irrelevant distinctions.").

Appellants also fixate on the fact that Agent Hicks's detention occurred in

his vehicle as compared to a home. App. Br. at 22-23. But, as the Fourth Circuit

observed in confronting Appellants' same argument on interlocutory appeal, Agent

Hicks's case involves "traffic stop[s]," and "courts regularly apply *Bivens* to

Fourth Amendment claims arising from police traffic stops <u>like this one</u>." *Hicks*,

965 F.3d at 311-12 (emphasis added) (citing *Schultz v. Braga*, 455 F.3d 470, 479

(4th Cir. 2006) (permitting *Bivens* claim for officer's use of excessive force during

traffic stop); *McLeod v. Mickle*, 765 F. App'x 582, 584-85 (2d Cir. 2019)

(cognizable *Bivens* claim for Fourth Amendment violation during traffic stop by

federal officer that is "prolonged beyond the time reasonably required to complete

[the] mission"); *Martin*, 830 F.2d  at 263 (*Bivens* claims against USPP officer for

Fourth Amendment violations that occurred during the course of a traffic stop)).

Under case precedent, the constitutional right to be free from illegal seizure is the same regardless of where the seizure occurs.[3]

It is Appellants' burden to "articulate why this case differs in a meaningful way under [*Abbasi*]'s rubric." *Jacobs*, 915 F.3d at 1038 (finding no *Bivens* extension where plaintiff's claims are "run-of-the-mill challenges to standard law enforcement operations"). Nothing in *Bivens* or its progeny remotely suggests that *Bivens* violations must occur in a home, and Appellants' argument must be rejected.

---

[3] Appellants' citations to out-of-circuit district court cases (both in their brief and Supplemental Authorities attachment) are unpersuasive, as the courts found other facts to be meaningful differences to *Bivens*. *See Robinson v. Pilgram*, No. 20-cv-2965, 2021 WL 5987016, at *12 (D.D.C. Dec. 17, 2021) (officers executed a vehicle search steps away from the White House); *Rivera v. Samilo*, 370 F. Supp. 3d 362, 368-69 (E.D.N.Y. 2019) (officers used "excessive force incident to a lawful arrest;") *Bivins v. Rodriguez*, No. 2:18-cv-2671, 2020 WL 134115 (E.D. Cal. Jan. 13, 2020) (high speed chase); *Young v. City of Council Bluffs, Iowa*, 1:20-cv-30-JAJ, 2021 WL 6144745 (S.D. Iowa, Oct. 27, 2021) (arrest of different person with same name as suspect); *see also Doe v. Meron*, 929 F.3d 153 (4th Cir. 2019) (military personnel); *Tun-Cos*, 922 F.3d at 514 (immigration officials or policy); *Annappareddy*, 996 F.3d at 120 (high-ranking government officials or new categories of defendants); *Attkisson*, 925 F.3d at 606 (same). Other cases involve malicious prosecution, fabrication of evidence, or other factual scenarios that are different from a routine seizure case. *See Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020); *Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019); *Cantu v. Moody*, 933 F.3d 414 (5th Cir. 2019); *Karkalas v. Marks*, Civ. No. 19-948, 2019 WL 3492232 (E.D. Pa. July 31, 2019); *Bibbs v. Nat'l Park Serv.*, No. 2:17-cv-3885, 2020 WL 476035 (W. Va. Jan. 3, 2020).

**C.      The District Court Correctly Found That, Even if This Case Presented a *Bivens* Extension, There Are No Special Factors Counseling Against Extending *Bivens*.**

For all the reasons addressed above, the district court correctly held that this case does not present an extension of *Bivens*. J.A. at 817-21. The district court further held that there is no special factor that counsels against allowing the jury's verdict to stand. *Id.* at 821-23. This Court does not need to proceed with this second inquiry, but if it chooses so, it should affirm the district court's finding.

When presented with a request to extend the *Bivens* remedy to any new context, the "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58; *see also Egbert*, 2022 WL 2056291, at *7. Alternative remedial structures must also be taken into account. *Abbasi*, 137 S. Ct. at 1858; *see also Egbert*, 2022 WL 2056291, at *6. If there is a "special factor" that "cause[s] a court to hesitate before answering that question in the affirmative, then a *Bivens* remedy is unavailable." *Tun-Cos*, 922 F.3d at 523 (citing *Abbasi*, 137 S. Ct. at 1858).

Appellants raise four arguments on why they believe this case implicates special factors counseling hesitation, all of which fail.

First, Appellants point again to the fact that, due to the "inter-agency nature of the squabble," Appellants "were merely waiting for a next level-supervisor to

25

arrive on the scene." App. Br. at 26-27. This argument is nothing more than a
reiteration of their theory that they detained Agent Hicks pursuant to some USPP
policy—a theory the jury rejected. *See* J.A. at 807 (S.V. 4). Moreover, Appellants
cite no case law to support the argument that the identity of Agent Hicks as a
federal employee should give rise to a special factor counseling hesitation. Nor do
the facts support it: Agent Hicks's detention violated his individual citizen Fourth
Amendment rights only. As the district court correctly noted, this is "a
straightforward case of routine search and seizure law. Agent Hicks's
constitutional protections did not differ from any other citizen's rights based on his
employment as a law enforcement officer." J.A. at 821 (citing *Correctional Servs.
Corp. v. Malesko*, 534 U.S. 61, 70 (2001) ("[t]he purpose of *Bivens* is to deter
individual federal officers from committing constitutional violations.")).

Second, Appellants claim that an internal Secret Service investigation of the
incident is an adequate "alternative remedial structure" that should counsel against
extending *Bivens.* App. Br. at 27-28. It is important to emphasize that the
investigation Appellants refer to is one by the <u>Secret Service</u>, which is Agent
Hicks's employer, not Appellants', rendering it hard to envision how Agent
Hicks's employer might provide remedy for the wrongdoing at issue. Information
regarding this Secret Service investigation is sparse and vague: as Appellants note,
it comprises of a single speculative mention in Special Agent Michael Ratay's

deposition regarding an interview he had with the Secret Service: ("Q: Do you recall any reason why they [USSS] wanted to speak with, to speak to you in November of 2015? A: Well, I think any time an agent or employee is detained, or in an incident with another agency, it's an automatic meeting and fact-finding mission."). J.A. at 301 (emphasis added). Apart from Agent Ratay's recollection, there is no record evidence describing what this Secret Service internal investigation might have entailed, including who was being investigated, the scope of the investigation, and what consequences could occur (and against whom). The district court reasoned that it could not find this to be an adequate remedy "without knowing more, without knowing what the investigation was done for[,] what reason and for what purpose[,] and what consequences could occur." *Id.* at 582. Appellants could have elicited more testimony (and conducted more discovery) on alternative remedial structures, but they did not, and there is no evidence of a sufficient remedial structure here.

The Supreme Court's recent holding in *Egbert* confirms that the Secret Service investigation here cannot qualify as an alternative remedial structure that could pass muster as a factor counseling hesitation. In *Egbert*, the Supreme Court assessed whether a remedial framework created by the Border Patrol satisfied the "alternative remedial structure" requirement and concluded it did. 2022 WL 2056291, at *8-9. In contrast to the instant case, Congress had enacted a law

27

requiring Border Patrol to monitor its employees, and Border Patrol had in turn

created a grievance program to investigate any "alleged violations of the standards

for enforcement activities." *Id.* The Court focused on the fact that "Congress or the

Executive has created a remedial process that it finds sufficient to secure an

adequate level of deterrence." *Id.* at *9. *Egbert* remains consistent with this

Circuit's statement in *Tun-Cos* that "the relevant question is not what remedy the

court should provide for a wrong that would otherwise go unredressed but instead

whether an elaborate remedial system should be augmented by the creation of a

new judicial remedy." 922 F.3d at 514, 526; *see also, e.g.*, *Annappareddy*, 996

F.3d at 137 (describing congressional statute creating remedial system for victims

of wrongful government conduct in criminal prosecutions). Here, the Court need

not opine on *Egbert* because, for the reasons discussed *supra* Section II.B, this case

is not an extension of *Bivens* and the inquiry stops there, but even if it did, it should

find no sufficient remedial structure. There is no evidence that Congress or the

Secret Service created a "process" of any sort to resolve Agent Hicks's complaints,

and practically speaking, it is difficult to envision Congress contemplating that

police misconduct complaints against USPP be filtered through the Secret Service,

Agent Hicks's employer. This argument fails.

Third, Appellants attempt to persuade the Court that there are potential

national security implications because Agent Hicks was stopped "near the

headquarters of the National Security Agency." App. Br. at 28. This argument was not raised in front of the district court and is nowhere to be found in the record—and for good reason, as it is pure speculation. Appellants cite only a Google Map to demonstrate that the location at which Agent Hicks was detained is "close" to Fort Meade. There is certainly no record evidence suggesting that Appellants considered Agent Hicks to be a national security threat. Appellants are no doubt trying to wedge this case into the line of international border cases discussed earlier, *see supra* pp. 21-22, but their attempts to apply this factor stretches the jurisprudence beyond reason and must be rejected.

Finally, Appellants baselessly suggest that permitting this claim to proceed would result in an "onslaught of new *Bivens* claims" because "any litigant who feels the welfare check lasted too long could now bring a *Bivens* action." App. Br. at 30. As discussed earlier, Agent Hicks's case is not a new *Bivens* context, and cases with similar contexts have been brought before. And, in the words of the district court, "the facts of this case with a law enforcement officer plaintiff do not present similar concerns of intruding into an area with the potential for a high-volume of this type of specific complaint[.]" J.A. at 820. Unlike, for example, cases involving prison-based claims, there is simply nothing on this record that would suggest that there are hundreds or even dozens of putative plaintiffs

29

awaiting relief. The Court should thus reject Appellants' Motion and allow Agent Hicks's verdict to stand.

## III. The District Court Properly Found That Appellants Are Not Entitled to Qualified Immunity.

Appellants next argue that Agent Hicks's case should be dismissed on qualified immunity grounds. App. Br. at 31. Appellants' actions patently violated Agent Hicks's Fourth Amendment rights, which were clearly established at the time of their conduct, and the Court should affirm the district court's finding that Appellants are not entitled to qualified immunity.

The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity only protects government officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Wingate v. Fulford*, 987 F.3d 299, 311 (4th Cir. 2021) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To establish that they are entitled to qualified immunity, the defendant must establish that (1) no constitutional right was violated, or (2) that the right was not clearly established at the time that the violative conduct occurred. *Pearson*, 555 U.S. at 223. Appellants prove neither.

30

## A.    Appellants Violated Agent Hicks's Fourth Amendment Rights.

First, it is clear that Appellants violated Agent Hicks's Fourth Amendment rights. The Fourth Amendment affords "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The jury's verdict establishes that Agent Hicks's constitutional rights were violated during his two encounters with Appellants, and Appellants say nothing to the contrary.

The jury's finding that Appellants violated the Fourth Amendment during the first encounter satisfies this prong of qualified immunity. *See* J.A. at 806-07 (Appellants "acted under color of law to violate Plaintiff Agent Hicks's constitutional rights under the Fourth Amendment during the first encounter with Agent Hicks."). As further confirmation, by way of special interrogatories, the jury found that Agent Hicks provided his Secret Service credentials but did not reach for his gun when Officer Ferreyra approached his car. J.A. at 807 (S.V. 2). The jury also found that Officer Ferreyra knew that Agent Hicks was a Secret Service Agent once he properly verified Agent Hicks's credentials, *id.* (S.V. 3); thus, from that point onward, "Officers Ferreyra and Phillips unreasonably detained Agent Hicks knowing that he was a Secret Service Agent." *Id.* at 811. Overall, the jury found that the totality of Officers Ferreyra and Phillip's actions during the first encounter were not reasonably necessary. *Id.* at 807 (S.V. 6).

31

The jury's verdict likewise establishes that Officer Phillips violated Agent Hicks's Fourth Amendment rights during the second encounter. The jury found that Officer Phillips knew that Agent Hicks was driving the vehicle before pulling Agent Hicks over and before demanding his driver's license. *Id.* at 808 (S.V. 8-9). The jury also found that Agent Hicks was not driving erratically when Officer Phillips pulled him over. *Id.* at 808 (S.V. 7). The jury therefore found that Phillips "acted under color of law to violate Agent Hicks's Fourth Amendment constitutional rights when he stopped Agent Hicks during the second encounter." *Id.* at 807. Thus, the Court should affirm the district court's finding that Agent Hicks's constitutional rights were violated.

### B. Agent Hicks's Fourth Amendment Rights Were Clearly Established at the Time that Appellants Violated His Rights.

The Court should also affirm the district court's finding that Officers Ferreyra and Phillips were aware of Agent Hicks's Fourth Amendment rights, which were clearly established at the time. To determine whether a right is clearly established, a court must define the right at issue, and then ask "whether the law 'is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Halcomb v. Ravenell*, 992 F.3d 316, 320 (4th Cir. 2021) (quoting *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016)). "A 'general constitutional rule may apply with obvious

32

clarity even though the very action in question has not previously been held unlawful.'" *Halcomb*, 992 F.3d at 320 (quoting *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017)).

With respect to the first encounter, the district court correctly found that Agent Hicks's right "not to be detained without probable cause was clearly established." J.A. at 812. The district court emphasized that Supreme Court cases have clearly established that a traffic stop may "last no longer than is necessary to effectuate [its] purpose," and an officer may not "prolong[] the stop, absent [] reasonable suspicion." *Rodriguez v. U.S.*, 575 U.S. 348, 354-55 (2015); *see also Illinois v. Caballes*, 543 U.S. 405 (2005). The district court's analysis tracks that of the Fourth Circuit in *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 561 (4th Cir. 2017), *as amended* (Aug. 22, 2017), *cert. denied sub. nom.*, 138 S. Ct. 3602 (2018), which found that the question of qualified immunity turned on whether "the Fourth Amendment right to be seized only on probable cause was clearly established at the time of the events at issue here."

The jury's specific factual findings, as supported by the evidentiary record, also demonstrate that Appellants would have understood that their actions violated clearly established law. Here, "as found by the jury, and as described by the officers themselves," the officers detained Agent Hicks well after they ascertained that they did not have probable cause or reasonable suspicion to hold him. J.A. at

33

812. Officer Ferreyra "knew that Agent Hicks was a Secret Service Agent once he properly verified his credentials." *Id.* at 807 (S.V. 3). Further, the jury rejected Appellants' claim that they continued to detain Agent Hicks pursuant to some "customary practice," finding instead that the "totality of [Appellants'] actions were [not] reasonably necessary at the scene of the first encounter." *Id.* at 807 (S.V. 4, 6). Because Appellants detained Agent Hicks well after they had legitimate reason to do so, their actions violated clearly established law.

The analysis regarding the second encounter is just as straightforward. The district court correctly held that it was clearly established at the time of the second encounter that "Agent Hicks had a Fourth Amendment right not to be stopped absent a 'reasonable, articulable suspicion'" of criminal activity. J.A. at 813 (citing *United States v. Place*, 462 U.S. 696, 702 (1983)). Because the jury did not find credible Officer Phillips's explanation that he observed a motorist driving erratically, and instead found that Phillips knew Agent Hicks was in the vehicle before stopping him, *see* J.A. at 808 (S.V. 7-8), Officer Phillips had no reasonable suspicion of criminal activity to stop Agent Hicks. His decision to detain him without reasonable suspicion thus violated clearly established law. *See* J.A. at 813 (it is "simply not credible to suggest" that Officer Phillips did not know that reasonable suspicion "at minimum" was required to stop Agent Hicks.).

34

Appellants' arguments completely ignore the special interrogatories answered by the jury and rely instead of incorrect characterizations of the facts and law, which must be rejected.

First, Appellants base their qualified immunity arguments on a factual recitation that violates the factual standard on appeal. *See* App. Br. at 6-11. At this stage, the Court must view the facts "in the light most favorable to the prevailing party." *Bakkebo*, 506 F.3d at 294. Yet Appellants' version of the facts has no basis in what the jury found, and at some points directly contradicts the jury's findings. *See supra* p. 9, n.1. Appellants cannot present their own version of the facts at this stage, and this should prove fatal for their qualified immunity claims.

Second, Appellants claim, vaguely, that qualified immunity is warranted because "no specific prior precedent exists" that includes the "unusual" circumstances surrounding this case. App. Br. at 35. Appellants do not try to distinguish the Supreme Court precedent the district court relied on, instead citing to a handful of cases for the generic proposition that courts may not perform analyses abstractly. *But see Humbert*, 866 F.3d at 561 (reversing district court's finding of qualified immunity because inquiry should be whether "the law made clear that arresting . . . without probable cause amounts to a seizure in violation of the Fourth Amendment."); *see also Williams v. Strickland*, 917 F.3d 763, 770 (4th Cir. 2019) ( "[W]e need not—and should not—assume that government officials

35

are incapable of drawing logical inferences, reasoning by analogy, or exercising common sense."). In this case, Appellants testified that they understood from their training they could not detain a person in violation of the Fourth Amendment, J.A. at 454, 532, and the alleged USPP policy that Appellants purported to be the reason for detaining Agent Hicks was flatly rejected by the jury, *id.* at 807 (S.V. 4). There remains nothing unusual about this case that could have prevented Appellants from using "common sense" and their Fourth Amendment training. The district court's holding on qualified immunity should be affirmed.

## IV. The District Court Did Not Abuse Its Discretion in Sustaining the Jury's Compensatory and Punitive Damages Awards.

After the four-day trial, the jury awarded compensatory and punitive damages based on Appellants' violations of Agent Hicks's Fourth Amendment rights. *See* J.A. at 807-08. The district court appropriately sustained that award, finding that the damages awarded were not against the weight of the evidence, based on false evidence, or a miscarriage of justice. *Id.* at 832 (citing *Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors*, Inc., 99 F.3d 587, 593 (4th Cir. 1996)).

The district court's finding is entitled to substantial deference and should be affirmed by this Court.

### A. The Compensatory Damages Award Is Supported by the Substantial Evidence Presented During Trial.

As the district court found, ample evidence supports the jury's compensatory damages award against Appellants Ferreyra and Phillips ($80,000 and $125,000, respectively). "[C]ourts defer to a jury's award of damages for intangible harms, such as emotional distress, 'because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.'" *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 180 (4th Cir. 2001). The Fourth Circuit will reverse the denial of a motion for a new trial by the district court "only upon a showing of abuse of discretion." *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 672 (4th Cir. 2015).

This circuit has regularly upheld awards of compensatory damages for emotional distress in civil rights cases that are comparable to or exceed the jury's award here. *See, e.g.*, *Fox*, 247 F.3d at 180 (upholding jury award of $200,000 for emotional distress against sole defendant because "we cannot conclude that [the award] was grossly excessive or shocking to the conscience"); *Bingman v. Baltimore Cnty.*, 714 F. App'x 244, 246 (4th Cir. 2017) (upholding $298,000 non-economic damages verdict); *Homesley v. Freightliner Corp.*, 61 Fed. App'x. 105, 117 (4th Cir. 2003) (upholding $200,000 verdict).

37

Here, the district court did not abuse its discretion in affirming the jury's compensatory damages award of $205,000 against two defendants based on clear record testimony regarding the emotional injuries Agent Hicks suffered due to Appellants' conduct. Agent Hicks testified about the fear and humiliation that he experienced as a direct result of Appellants' actions. *See, e.g.*, J.A. at 145-46. He explained that he feared for his life, *id.* at 141, 145; that Appellants repeatedly belittled and demeaned him, *see, e.g.*, *id.* at 126, 129-30, 145-46; and that he was prevented from completing a work assignment, *id.* at 144.

Agent Hicks further testified about the lasting, negative impact Appellants' conduct had on him. Agent Hicks explained that these events dramatically changed his interactions with his family and caused him to have trouble sleeping. *Id.* at 149-51; *see also id.* at 146-47 (he still considers the incident "a tragedy that happened in [his] life,"); *id.* at 146, 148 (these encounters are "something that scarred [him] deeply within."). As a direct result of these events, Agent Hicks sought and attended psychological counseling for the first time in his life. *Id.* at 149-50. The district court found Agent Hicks's testimony on all of this credible. *Id.* at 834-35.

Contrary to Appellants' representations, Agent Hicks also presented corroborating evidence to support his claim for compensatory damages. Agent Aaron Simon, a Secret Service Agent who was part of the motorcade, testified to the effects of the encounter on Agent Hicks during and following the incident. *Id.*

38

at 283. Agent Michael Ratay also testified, noting that he heard by phone Officer Phillips telling Agent Hicks that he was "getting mouthy." J.A. at 298. And, most impactfully, Miltom Wilson, currently Deputy Assistant Director of the United States Secret Service, testified that the first time he saw Agent Hicks after these events, Agent Hicks appeared to be in "anguish," and had a visibly different appearance, posture, and demeanor. *Id.* at 308-09. According to Deputy Director Wilson, Agent Hicks had the demeanor of "someone who had lost a close relative to a violent or sudden death." *Id.* The district court found Deputy Director Wilson's "corroborating testimony credible." *Id.* at 835.

The evidence Agent Hicks introduced regarding his emotional distress was specific, detailed, corroborated, and unimpeached by Appellants at trial. In light of the testimony introduced at trial, the district court properly found that the compensatory award was not excessive. *Id.* at 836-37. The court particularly noted that the jury's award was not unreasonable given the "psychological harm suffered by Agent Hicks." *Id.* The district court's careful review of the evidentiary record was well-founded, and nothing in it remotely signals an abuse of discretion. *See Jones*, 777 F.3d at 672.

Appellants' arguments with respect to compensatory damages must be rejected. First, Appellants reiterate their argument that Agent Hicks's trauma was mostly related to having a gun pointed at him. App. Br. at 41. This was rejected by

39

the district court. As Agent Hicks explicitly testified, he was terrified that, "after [his] credentials had been received," Officer Ferreyra was "spitting from the mouth and aggressively holding his handgun which was shaking at the time[.]" J.A. at 145 (emphasis added); *see also id.* at 125. Further, the jury considered ample evidence about Agent Hicks's emotional distress that was not related to the gun; for instance, as the district court noted, Agent Hicks testified "about his humiliation at being detained and feeling belittled by the disparaging behavior (cursing, sneering, verbal assaults), as well as feeling upset and scared by the ordeal." J.A. at 834. Appellants' conjecture that the jury relied on testimony related to the gun is purely speculative and cannot support their motion for a new trial.

Second, Appellants allege that Agent Hicks did not specify behavior by Appellant Phillips that caused his emotional injuries. App. Br. at 43. Quite the opposite is true. *See, e.g.*, J.A. at 141 (when asked about the second encounter with Officer Phillips, Agent Hicks stated that he tried to appear calm, and when asked why, he stated "[b]ecause of fear of what could possibly happen."); *see also id.* at 130 (Officer Phillips acting "belligerent" and taunting Agent Hicks); *id.* at 145-47 (describing his distress resulting from taunting and detention "by these defendants"). Moreover, as the district court noted, the jury's larger compensatory damages award against Officer Phillips appeared to consider whether Officer Phillips caused "additional mental anguish by stopping Agent Hicks within

40

minutes of him being released from the first encounter, no doubt experiencing relief at bring finally freed, only to be pulled over by Officer Phillips and further detained without cause." *Id.* at 837.

Finally, the cases cited by Appellants cannot support their argument. Appellants contend that Agent Hicks did not make the requisite showing of damages because he did not exhibit every factor outlined in *Knussman v. Maryland*, 272 F.3d 625 (2001), but *Knussman* clearly does not require that a plaintiff prove every factor listed.[4] In any event, Agent Hicks did adduce significant evidence highlighted by *Knussman*, including his testimony about seeking "psychological treatment" for the first time in his life because of Appellants' conduct, 272 F.3d at 640, J.A. at 150; testimony by other Agents that "corroborated the testimony" about his emotional distress, 272 F.3d at 640, J.A. at 283, 308; testimony regarding the high "degree of such mental distress," 272 F.3d at 640, J.A. at 146-47, 149; and the "factual context in which the emotional distress developed." 272 F.3d at 640, J.A. at 145-46 (describing that he felt "alone" and "completely helpless" as an "African-American male that was surrounded by all

---

[4] Appellants also attempt to minimize Agent Hicks's emotional distress because the therapist from whom Agent Hicks sought treatment did not testify at trial. App. Br. at 45. Yet *Knussman* clearly does not require that corroborative evidence come from a mental health professional. *Knussman*, 272 F.3d at 640.

41

Caucasian officers" when the motorcade passed him and he was unable to do his job duties as a result).

In *Hetzel v. Cnty. of Prince William*, 89 F.3d 169, 171 (4th Cir. 1996), the Fourth Circuit criticized the trial court's damages award for emotional distress because the trial court largely relied on the plaintiff's demeanor during trial, and "[q]uite obviously, a litigant's demeanor while at counsel table is not evidence to support a damage award." The Court also noted that the plaintiff in *Hetzel* "presented no evidence corroborating the existence of any of her supposed specific harms;" Hetzel did not seek professional help or confide in a friend following the conduct at issue. 89 F.3d at 171. By contrast, Agent Hicks introduced testimony from multiple witnesses corroborating his emotional injuries following the incident, and he sought psychological counseling. J.A. at 150. If anything, *Hetzel* demonstrates the need to uphold the jury's compensatory damages award here.

Accordingly, Fourth Circuit case law and the facts presented at trial amply support the jury's compensatory damages award for Agent Hicks, and the district court did not abuse its discretion when sustaining that award.

## B.   The Punitive Damages Award Is Not Excessive.

Ample evidence also supports the jury's punitive damages award against Appellants Ferreyra and Phillips ($225,000 and $300,000 respectively). Punitive damages are available in a *Bivens* suit, and they are "especially appropriate to

42

redress the violation by a Government official of a citizen's constitutional rights."
*Carlson v. Green*, 446 U.S. 14, 21-22 (1980). A court's review of a jury's punitive
damages award focuses on whether the award will result in a miscarriage of
justice. *Atlas*, 99 F.3d at 594. To determine whether an award is supported by the
evidence, the Fourth Circuit adheres to three guideposts: "(1) the degree of
reprehensibility of the defendant's conduct; (2) any disparity between the actual or
potential harm suffered by the plaintiff and the amount of the punitive award; and
(3) any difference between the award and civil penalties that are authorized or
imposed in comparable cases." *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 376
(4th Cir. 2008) (citing *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408,
418 (2003)).

    Here, the jury's punitive damages award against Appellants was reasonable
and well supported by the record. The district court carefully considered the three
guideposts and found that the jury's punitive damages award was not
unconstitutionally excessive and did not result in a miscarriage of justice. J.A. at
837-840. Appellants have not raised anything on appeal that changes the analysis.

    First, the district court found reprehensibility based on Appellants' malicious
conduct. The court found that Appellants detained Agent Hicks "unnecessarily and
deliberately," "knowing that Agent Hicks was an on-duty secret service agent,"
and causing him to miss his motorcade assignment. J.A. at 838. They did so

despite the fact that they lacked probable cause or reasonable suspicion of criminal activity. Instead, they acted in retaliation for Agent Hicks's purported "disagreement" with Officer Ferreyra, *id.* at 461, and simply because they could, by virtue of their power as armed, law enforcement officials.

The district court also noted that, beyond just detaining him, both Appellants went out of their way to humiliate Agent Hicks. *Id.* at 838. Their detention of Agent Hicks was punctuated by "abusive language, belittling and demeaning remarks, and spiteful, harassing behavior by both Defendants." *Id.* It was egregious enough that third-party Secret Service Agents, with no stake in these proceedings, testified that Appellants were so loud that they could overhear the tone and substance of their conversations through Agent Hicks's cell phone. *See, e.g.*, *id.* at 242 (Agent Bradley describing hearing Appellants yell at Agent Hicks through the phone). Officer Phillips taunted and disrespected Agent Hicks during the first stop, involving himself in multiple unnecessary interactions even though he knew there was no criminal behavior being investigated. *Id.* at 150. Then, just moments after Agent Hicks was released, Officer Phillips continued to harass him by stopping him a second time. *Id.* Officer Phillips continued his malicious conduct, at one point telling Agent Hicks he was mouthy and demanding his license, though Officer Phillips obviously knew Agent Hicks's identity. *Id.* at 298. The record is more than enough to substantiate "emotional harm with malice." *Id.* at 839. As the

44

district court concluded, "certainly, the type of behavior found by the jury is appropriate for both punishment and deterrence." *Id.*

Appellants ignore this wealth of evidence of reprehensibility. Instead, their argument hinges entirely on their contention that Agent Hicks was not financially vulnerable and that no one was physically harmed. App. Br. at 49. Appellants' arguments fail as a factual matter: Agent Hicks was in a vulnerable position during the entirety of his detention, and, as the district court found and Agent Hicks noted in his testimony, if he had not remained calm, either encounter could have had a tragically violent outcome for him. J.A. at 839. Such potential harm can be considered in a punitive damages award. *See TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 460-61 (1993). Moreover, *State Farm* does not contemplate that every reprehensibility factor will be relevant to the facts at hand. "[T]he absence of all of [the factors] renders any award suspect," 538 U.S. at 419 (emphasis added), but that is obviously not this situation here.

Appellants made no argument with respect to the second and third *State Farm* guideposts for punitive damages, thereby waiving these arguments. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012), *as amended* (May 9, 2012). The district court's post-trial decision correctly found that the punitive damages awards are appropriate under these criteria. As the district court noted, the jury's total punitive damages award against both Appellants was less than three

times the combined compensatory damages. J.A. at 839. This ratio is in line with

Supreme Court and Fourth Circuit precedent, which supports ratios of at least 9 to

1. *See State Farm*, 538 U.S. at 425; *Saunders v. Branch Banking and Tr. Co. of

VA*, 526 F.3d 142, 154 (4th Cir. 2008) (characterizing a single digit punitive to

compensatory damages ratio as "normal"). For all these reasons, the district court

did not abuse its discretion in affirming the punitive damages award here.

## V. The District Court Did Not Abuse Its Discretion in Permitting the Introduction of Indemnification Evidence After Appellants Opened the Door.

Finally, the district court properly denied Appellants' motion for a new trial

on damages. The district court did not abuse its discretion in allowing Agent Hicks

to address indemnification during his rebuttal argument after Appellants argued in

their closing that they would be personally responsible for paying any damages

award. Nor did it abuse its discretion in allowing Agent Hicks to read from a sworn

interrogatory response instead of issuing a curative instruction.

As noted above, the Court must grant a new trial if the verdict is against the

clear weight of the evidence, based upon false evidence, or will result in a

miscarriage of justice. *Knussman*, 272 F.3d at 639. "Unless justice requires

otherwise, no error . . . by the court or a party [] is ground for granting a new trial."

Fed. R. Civ. P. 61. "The district court is afforded broad discretion in controlling

closing arguments and is only to be reversed when there is a clear abuse of its discretion." *United States v. Baptiste*, 596 F.3d 214, 226 (4th Cir. 2010).

The district court properly denied Appellants' motion for a new damages trial, there was no abuse of discretion here, and its decision should be affirmed. The district court's decision took care to describe the relevant trial record in detail. J.A. at 824-29. (Appellants have not objected to the district court's recitation.) Some relevant facts are as follows:

- At no point prior to closing arguments did either party introduce indemnification-related evidence.

- Agent Hicks's closing argument made no reference to indemnification or who would be responsible for paying a judgment if the jury awarded damages.

- Although there was no evidence in the record on it, and although Agent Hicks did not raise it, Appellants' closing argument repeatedly made the argument that the judgment would be paid out of the officers' own pockets—in other words, that they would <u>not</u> be indemnified. Appellants' statements included:

  - "[Officer Ferreyra] approaches the car and what does he ultimately get? He gets this. He gets a federal lawsuit where Agent Hicks ultimately is **seeking to put a vacuum cleaner up to his bank**

47

**account**. (Pause) He gets a federal lawsuit **seeking to have a vacuum cleaner put on his bank account** to award damages that they don't even have the guts to put a number on." J.A. at 716-17.

   o "But think about this: They talk about missing the motorcade. What they're doing is they're saying, **they want you to award unspecified damages against these men personally** because it took too long for Sergeant Wallace to get to the scene. That's really what it is." J.A. at 729-30.

   o "You put two people at risk **with their personal bank accounts**. This is not a government lawsuit. **You put two people's families at risk to a back computer** - bank accounts[.]" J.A. at 734.

- Agent Hicks's trial counsel then sought a sidebar to seek permission to introduce rebuttal evidence, in the form of a sworn interrogatory, that the officers would be indemnified by the U.S. Government. The Court agreed that "that door has been opened," and noted that Appellants' closing "invokes sympathy in a way that's inconsistent with the way instructions were[.]" It concluded, "I'm going to let plaintiffs have an opportunity to address it by saying . . . whatever the interrogatory answer is[.]" *Id.* at 745. At no point did Appellants seek that the Court issue a curative instruction instead.

48

- In rebuttal, Agent Hicks's trial counsel read in the following: "The question is, 'If any person or entity may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy any judgment in this action, describe the terms of any such agreement or arrangement.' And the sworn response was, 'The U.S. Government will cover any liability held against Officer Ferreyra and Officer Phillips as long as he was acting within the scope of his employment during the pertinent times.' And he certainly was, because he was on duty, both of these officers, as U.S. Park Police officers." *Id.* at 749-50. Appellants' counsel did not object after this interrogatory was read by Agent Hicks's counsel.

It is against this backdrop that the Court allowed Agent Hicks to inform the jury about indemnification. Appellants' arguments to the contrary misstate the facts and the law and must be rejected.

The introduction of indemnification evidence in rebuttal was, in the district court's words, a "self-inflicted wound." *Id.* at 829. The district court permitted Agent Hicks to address indemnification in rebuttal because Appellants opened the door—"not once, but several times"—by arguing that they would be responsible for paying the judgment and by asking the jury to consider their personal bank accounts in assessing Agent Hicks's claim for damages. *Id.* at 830. Courts remain

49

divided on whether evidence regarding indemnification is independently relevant

when a plaintiff seeks punitive damages.[5] But, <u>where a defendant has chosen to</u>

<u>place the impact of a judgment on his finances at issue</u>, there is no split: courts

have universally allowed plaintiffs to introduce indemnification evidence. *See, e.g.*,

*Jones v. Allen*, No. PX-15-1173, 2016 WL 9443772, at *8 (D. Md. Oct. 24, 2016)

(citing *Lawson v. Trowbridge*, 153 F.3d 368, 379-80 (7th Cir. 1998)); *Medvedeva*

*v. Kirkland*, No. C14-7RSL, 2015 WL 11233650, at *1 (W.D. Wash. Aug. 21,

2015) (finding that if defendants "mention that they may be responsible for

payment of punitive damages, plaintiff will be permitted to offer evidence

regarding individual defendants' potential indemnification"); *Dallas v. Goldberg*,

No. 95-cv-9076, 2002 WL 1013291 at *5 (S.D.N.Y. May 20, 2002) (finding it

"appropriate to permit Plaintiff to proffer evidence concerning indemnification if

evidence concerning Defendants' personal financial resources is proffered,"

despite Defendants' arguments concerning the "uncertainty of indemnification");

*Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010). Although

Appellants tacitly concede that they opened the door here, App. Br. at 55, they rely

---

[5] *See, e.g.*, *Wallace v. Poulos*, 861 F. Supp. 2d 587, 601 (D. Md. 2012) (citing to cases holding that indemnification can be independently relevant to punitive damages because "[t]he jury must know the impact an award will have on the defendant to properly assess punitive damages.").

on a line of cases that do not involve this important fact, and thus those cases have no bearing on the instant dispute.

In the alternative, Appellants argue that they are entitled to a new trial because of the nature of the indemnification evidence introduced (that is, the sworn interrogatory response). First, Appellants argue that the district court erred in its decision to permit Agent Hicks to read the sworn interrogatory instead of providing a curative instruction. App. Br. at 56. Second, Appellants argue that the district court erred in not correcting Agent Hicks's recitation of the interrogatory response to include language that the information contained was known to counsel and not the individual defendant. App. Br. at 53.

Both arguments fail. As a preliminary matter, Appellants did not raise these issues at trial. Appellants never asked that the district court issue a curative instruction in place of a sworn interrogatory.[6] Appellants likewise did not object after Agent Hicks's counsel read the interrogatory response or otherwise raise that it was read incompletely. "A motion for a new trial should not be granted . . . where the moving party has failed to timely object to the alleged impropriety giving rise to the motion." *Dennis v. Gen. Elec. Corp.*, 762 F.2d 365, 367 (4th Cir. 1985). "[I]f a party wishes to preserve an argument for appeal, the party must press

---

[6] Appellants' objection at trial was limited to the ground that the interrogatory was factually inaccurate because the officers are not automatically indemnified. The objection was based on the content, not the form, of the interrogatory. J.A. at 745.

51

and not merely intimate the argument. . . . In other words, the party must raise the argument in a manner sufficient to alert the district court to the specific reason the party seeks relief." *CoreTel Virginia, LLC v. Verizon Virginia, LLC*, 808 F.3d 978, 988 (4th Cir. 2015).[7]

Nor can Appellants' arguments prevail on their merits. To justify a new trial, Appellants need to show prejudice, *Knussman*, 272 F.3d at 639, but they are unable to demonstrate how the district court's decision to permit the rebuttal evidence in the form of an interrogatory would have played differently to the jury than an instruction to disregard Appellants' argument because it was baseless and inflammatory. As the district court put it, "In my discretion, I determined that reading Defendants' own words to the jury was an appropriate response. The interrogatory answer was not provided to the jury as evidence and was not repeated in response to the jury's question." J.A. at 830. Moreover, with respect to the contention that the jury was not told that counsel was the source of the information, the source of an interrogatory response is not a qualification of the interrogatory. *See, e.g.*, *Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233,

---

[7] Appellants also claim prejudice because they did not have an opportunity to respond to the indemnification evidence, and because the jury did not receive an instruction on interrogatories. *See* App. Br. at 53, n.8, and 54-55. These arguments fail because Appellants did not request an opportunity to respond to Agent Hicks's rebuttal argument and did not request that the Court add any instructions before the jury began its deliberations.

240 (W.D.N.C. 2010) (recognizing that interrogatory responses are required to include information known to attorneys regardless of whether the information is also known to parties). The inclusion of the sentence thus "would not have changed the essential substance of the reading." J.A. at 831.

Finally, Appellants' suggestion that any reference to indemnification influenced the jury to impermissibly inflate Agent Hicks's damages is speculative at best. The request to the jury to consider the impact of a judgment on Appellants' personal "bank accounts" and "families" posed a risk that the jury would award less damages than it otherwise thought would be warranted, such that indemnification information was necessary to level the playing field. J.A. at 716, 734. Indeed, "it seems just as likely that jurors would be <u>less</u> inclined to award a substantial punitive damage award if they were aware that they (as taxpayers) would feel the 'sting.'" *Wallace*, 861 F. Supp. 2d at 587, 603 (emphasis in original). Appellants opened the door by putting the source of a potential damages award at issue, and the Court did not err in permitting Agent Hicks to respond.

When analyzing whether a party made a prejudicial statement in a closing argument, this Circuit has held that "the question is simply one of judgment to be exercised in review with great deference for the superior vantage point of the trial judge and with a close eye to the particular context of the trial under review rather than to any general formulations of principle or to assessments of comparable

53

comments in other cases." *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 197

(4th Cir. 1982). The district court did not err, and certainly Appellants have not

met this high bar. As the district court reasoned, it is "not automatic that

Defendants would have to pay personally, which is what Defendants sought to

have the jury believe in their closing argument. The jurors were given balancing

information, and it was left in their capable hands to weigh the arguments and

return a verdict." J.A. at 831. The district court's well-reasoned decision must

stand.

**CONCLUSION**

For all of these reasons, Appellee respectfully requests that the Court affirm

the district court's decision to deny the post-trial Motion.

Dated: June 27, 2022                    Respectfully Submitted,

                                        /s/ Yiyang Wu
                                        Yiyang Wu
                                        Gemma Donofrio
                                        RELMAN COLFAX PLLC
                                        1225 19th Street, N.W., Suite 600
                                        Washington, DC 20036
                                        Phone: (202) 728-1888
                                        Fax: (202) 728-0848
                                        ywu@relmanlaw.com
                                        gdonofrio@relmanlaw.com

                                        *Counsel for Appellee*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 27th day of June, 2022, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Andrew C. White
Jodie E. Buchman
Edward Parent
SILVERMAN, THOMPSON, SLUTKIN & WHITE
400 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 385-2225

*Counsel for Appellants*

/s/ Yiyang Wu
*Counsel for Appellee*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 22-1339         **Caption:** HICKS v. FERREYRA

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains ___12,916___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14-point Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) *Yiyang Wu*

Party Name Nathaniel Hicks

Dated: June 27, 2022

[ Print to PDF for Filing ]   [ Reset Form ]   04/12/2020  SCC