No. 22-1339

IN THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

NATHANIEL HICKS,

*Plaintiff – Appellee*,

v.

OFFICER GERALD L. FERREYRA, in his individual capacity;
OFFICER BRIAN A. PHILLIPS, in his individual capacity,

*Defendants – Appellants*.

Appeal from the United States District Court
for the District of Maryland

DEFENDANTS-APPELLANTS'
PETITION FOR REHEARING EN BANC

Andrew C. White
Edward P. Parent
Jodie E. Buchman
Todd W. Hesel
Pierce Murphy
SILVERMAN THOMPSON SLUTKIN WHITE LLC
400 E. Pratt Street, Suite 900
Baltimore, Maryland 21202

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION AND RULE 35(A) STATEMENT ..................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................... 6

REASON FOR GRANTING THE PETITION............................................. 9

I.     The Opinion Conflicts With Decisions Of The U.S. Supreme Court, Other Courts Of Appeals, And The Recent Decisions Of This Court................................................................. 9

    A.    The Panel Applied Improper Analysis To Conclude That This Case Does Not Present *Bivens* In A New Context…………………………………………………………9

    B.    The Opinion's Erroneous Holding Is Compounded By the Panel's Failure To Review The Presence Of Any Special Favors Counseling Against Sustaining Agent Hicks' *Bivens* Remedy…………………………………………………………16

CONCLUSION................................................................................. 20

CERTIFICATE OF COMPLIANCE ............................................. 21

CERTIFICATE OF FILING AND SERVICE................................. 22

i

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Anderson v. Creighton,*
  483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)................ 19

*Annappareddy v. Pascale,*
  996 F.3d 120 (4th Cir. 2021) ...................................................... 11

*Bivens v. Six Unknown Fed. Narcotics Agents,*
  403 U.S. 388 (1971) ............................................................. 1,3,10

*Cady v. Dombrowski,*
  413 U.S. 433 (1973) ....................................................................... 4

*Collins v. Virginia,*
  138 S. Ct. 1663 (2018) ......................................................... 11, 18

*Dyer v. Smith,*
  56 F.4th 271 (4th Cir. 2022)............................................ 5, 12, 14

*Egbert v. Boule,*
  142 S. Ct. 1793 (2022) .......................................................... *passim*

*Hicks v. Ferreyra,*
  965 F.3d 302 (4th Cir. 2020) ...............................................*passim*

*Hernandez v. Mesa,*
  140 S. Ct. 735 (2020) ............................................................... 1, 2

*Lange v. California,*
  141 S. Ct. 2011 (2021) .................................................................. 11

*Mejia v. Miller,*
  61 F.4th 663 (9th Cir. 2023)............................................ 5, 12, 13

*Navarette v. California,*
   572 U.S. 393 (2014) ................................................................ 11

*Tun-Cos v. Perrotte,*
   922 F.3d 514 (4ᵗʰ Cir. 2019)................................................. 3, 12

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017) ........................................................ 1, 3, 5, 10

## **RULES**

FED. R. APP. P. 35(b)(1)(B) ............................................................ 5

## INTRODUCTION AND RULE 35(A) STATEMENT

The question herein is whether the implied cause of action recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), should be expanded to include claims arising from prolonged seizures arising from traffic stops by officers of the U.S. Park Police. The answer should be "no," as recent Supreme Court decisions have "made clear" that further expansion of *Bivens* is "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120,135 (2017) (citation omitted). Yet the panel's opinion (the "Opinion") in this appeal reached the <u>opposite</u> conclusion by misconstruing, or ignoring, binding Supreme Court precedent, a conflicting Ninth Circuit decision, and another decision by this Court, to create a precedent that could open the floodgates for new *Bivens* actions. This result, combined with the exceptional importance of the question presented, warrant rehearing en banc.

The Supreme Court in *Abbasi* adopted a "two-step inquiry" to be applied to all *Bivens* claims. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). First, a *Bivens* claim is unavailable if the case presents a "new context" or a "new category of defendant" from the Court's previous *Bivens* cases. *Id.*; *Abbasi*, 582 U.S. at 139-140. Second, even if the claim

presents a new context, a *Bivens* remedy is unavailable if "there are any special factors that counsel hesitation about granting the extension" of *Bivens*. *Mesa*, 140 S. Ct. at 743 (alterations, citation, and internal quotation marks omitted).

Then, while this appeal was pending, the Supreme Court issued its opinion in *Egbert*, which collapsed the *Abbasi* two-part test into a single inquiry: "whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1805 (citation and internal quotation marks omitted).

The Opinion's analysis, however, cannot be reconciled with either *Abbasi*'s two-part test – which the panel misapplied – or *Egbert*'s single inquiry – which the panel barely acknowledged. Specifically, the Opinion broadly reads *Abbasi* as having "reaffirmed that a *Bivens* remedy remains available to address violations of the Fourth Amendment involving unjustified, warrantless searches and seizures by line officers performing routine criminal law enforcement duties." *See* [ECF No. 49] at 12. On that basis, the panel concluded that Agent Hicks' *Bivens* claim – arising from two traffic encounters with U.S. Park Police officers –

2

constituted a "replay" of *Bivens* and therefore did <u>not</u> present a new context. *Id.* at 13, 15. In so doing, the panel found that *Abbasi* "reaffirmed" the sweeping proposition "that a *Bivens* remedy remains available to address violations of the Fourth Amendment involving unjustified, warrantless searches and seizures by line officers performing routine criminal law enforcement duties." *Id.* at 12.

*Abbasi, Egbert,* and its progeny do <u>not</u> so reaffirm such broad availability, and the panel's conclusion that it does is untenable under that jurisprudence. Indeed, a "meaningful" difference can be "modest" or even "quite minor." *Abbasi*, 582 U.S. at 147; *Tun-Cos v. Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019). A claim may arise in a new context even when – as compared with a previously recognized *Bivens* claim – the claim is based on the same constitutional provision, presents "almost parallel circumstances," and involves a "similar mechanism of injury." *Egbert*, 142 S.Ct. at 1805. There are <u>several</u> meaningful differences here, the most obvious of which being that this case arose out of a seizure of Agent Hicks while he was in his <u>work vehicle</u>, whereas *Bivens* involved a warrantless search <u>and</u> seizure in Bivens' <u>home</u>. *Bivens*, 403 U.S. at 389. "[F]or the purposes of the Fourth Amendment there is a

3

constitutional difference between houses and cars." *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973) (citation and internal quotation marks omitted). The panel did not appreciate even this <u>significant</u>, and clearly meaningful, difference.

Instead, the panel adopted the "replay" language of its holding from its prior decision in *Hicks v. Ferreyra*, 965 F.3d 302 (4th Cir. 2020) ("*Hicks I*"),[1] which notably relied upon this Court's <u>pre-*Abbasi*</u> jurisprudence, did <u>not</u> conduct a full *Abbasi* analysis pursuant to this Court's "standard forfeiture rule" regarding arguments on appeal (a conclusion that the *Egbert* court expressly <u>rejected</u>), but has now been set forth as a holding of this Court in a post-*Egbert* world. In sum, the Opinion's analysis constitutes a <u>colossal</u> misapplication of the controlling *Bivens* jurisprudence.

To wit, the panel did not analyze whether any special factors are present here – a significant oversight given Agent Hicks' <u>other</u> cause of action (a claim for relief filed under 42 U.S.C. § 1985(1)) plus evidence of alternative administrative remedies that are in the record. "[W]hen

---

[1] The composition of the panel here is identical to the panel that decided *Hicks I*.

alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 582 U.S. at 145.

Finally, if the aforementioned reasons were not enough to warrant rehearing en banc, the Opinion "conflicts with the authoritative decision[] of [an]other United States Court[] of Appeals that ha[s] addressed the issue." *See* FED. R. APP. P. 35(b)(1)(B). In *Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023), which was discussed during oral argument before the panel, the Ninth Circuit, in a Fourth Amendment *Bivens* claim involving a traffic violation by a utility terrain vehicle in a park managed by the National Park Service, held that the facts presented a new context because: (1) the Supreme Court has not recognized a *Bivens* claim against a Bureau of Land Management officer; (2) none of the events occurred in or near plaintiff's home; and (3) the entire incident occurred on public lands managed by the National Park Service, "a place where [plaintiff] Mejia had no expectation of privacy." *Mejia*, 61 F.4d at 669. Moreover, the Opinion even conflicts with another decision <u>by this Court</u>, which recognized that *Egbert* "all but closed the door on *Bivens* remedies." *Dyer v. Smith*, 56 F.4th 271, 277 (4th Cir. 2022). *Dyer* was decided correctly under *Abbasi* and its progeny, thus underscoring why

consideration by the full Court is necessary here: to stem a major expansion of *Bivens* and maintain uniformity with decisions by the Supreme Court, the Ninth Circuit, and this Court itself. For these reasons, as elaborated upon *infra*, this Petition should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On an early July morning in 2015, Defendant-Appellant, U.S. Park Police Officer Gerald L. Ferreyra ("Ofc. Ferreyra") observed a black sedan parked on the side of Interstate 295 in Maryland. *See* [ECF No. 49] at 3. Ofc. Ferreyra stopped to perform a "welfare check." *Id.* As he approached the car, Ofc. Ferreyra observed that its driver appeared to be asleep. *Id.* He then observed a handgun in a "holstered case" on the front passenger seat of the vehicle. *Id.* Ofc. Ferreyra reacted by pointing his gun at the driver and yelling at him not to reach for the weapon. *Id.* Unbeknownst to Ofc. Ferreyra, the driver was Plaintiff-Appellee Nathaniel Hicks ("Agent Hicks"), who was an on-duty special agent with the United States

---

[2] Although Appellants dispute certain descriptions within the Opinion's factual recitation, *see generally* [ECF No. 49] at 3-7, for purposes solely for this Petition, Appellants accept that recitation and incorporate it herein by reference, and tailor their summary of the facts accordingly.

Secret Service, sitting in an unmarked government vehicle waiting to join a motorcade. *Id.*

Ofc. Ferreyra then held Agent Hicks at the scene and called for additional U.S. Park Police officers to respond, explaining to Agent Hicks that he would not be released until a U.S. Park Police supervisor arrived at the scene. *Id.* Defendant-Appellee Officer Brian A. Phillips ("Ofc. Phillips") was the first U.S. Park Police officer to respond. Soon thereafter, a U.S. Park Police supervisor, Sgt. Wallace, arrived on scene – but not until after the motorcade passed. *Id.* Agent Hicks put Sgt. Wallace on the phone with his own U.S. Secret Service supervisor – with whom Agent Hicks had been communicating. *Id.* Following this conversation, Sgt. Wallace released Agent Hicks. *Id.* The entire duration of this encounter was approximately one hour. *Id.*

Just minutes after Agent Hicks left the scene of the first encounter, he was pulled over by Ofc. Phillips (who had left the previous scene prior to Agent Hicks' release), because, as Ofc. Phillips testified, he did not realize it was Agent Hicks' vehicle, and observed the car swerve while the driver was using his cell phone. *Id.* Ofc. Phillips asked for Agent Hicks'

7

license and registration, then released him after a few minutes without issuing a citation. *Id.*; *see also* J.A. 526-528.

Agent Hicks filed his lawsuit against Appellants in 2016, initially asserting only a single *Bivens* claim, before amending his Complaint to add a claim under 42 U.S.C. § 1985(1), alleging that Appellants engaged in a conspiracy to interfere with the discharge of Agent Hicks' official duties. *See* J.A. 15-31. The district court granted summary judgment on the Section 1985 claim, but denied it as to Appellants' request for qualified immunity on the *Bivens* claim. *See* [ECF No. 49] at 6; *Hicks v. Ferreyra*, 965 F.3d 302, 306-07 (4th Cir. 2020) ("*Hicks I*").

Appellants noted an interlocutory appeal in which they challenged not only the district court's qualified immunity ruling (which was affirmed), but <u>also</u> argued that Agent Hicks' *Bivens* claim was barred under *Abbasi*, which Appellants raised for the first time on appeal. *Hicks I*, 965 F.3d at 305, 309. At that time, this Court refused to address the matter under "standard forfeiture and waiver principles."[3] *Id.* at 311.

---

[3] Indeed, the Opinion states that the panel's holding in *Hicks I* was that Appellants "forfeited" this argument by raising it for the first time on appeal. *See* [ECF No. 49] at 6. Any such holding was <u>overruled by</u> <u>*Egbert*, in which the Supreme Court stated that</u> courts "have a concomitant responsibility to evaluate any grounds that counsel against

At trial, following the close of Agent Hicks' case, Appellants moved for judgment as matter of law on grounds that they were entitled to qualified immunity <u>and</u> that Agent Hicks' *Bivens* claim was not permitted under *Abbasi*.  *See* [ECF No. 49] at 7.  The district court denied the motion both at the end at Agent Hicks' case, then again when renewed following the close of all evidence, *see generally* J.A. 319-334, 563-576, before submitting the case to the jury, which returned a judgment for Hicks totaling nearly three-quarters of million dollars.  *Id.* This appeal followed.  *Id.*

Reason For Granting The Petition

I. **The Opinion Conflicts With Decisions Of The U.S. Supreme Court, Other Courts Of Appeals, And The Recent Decisions Of This Court.**

A. <u>The Panel Applied An Improper Analysis To Conclude That This Case Does Not Present *Bivens* In A New Context.</u>

The panel found a cognizable *Bivens* claim here by broadly defining the scope of the *Bivens* remedy.  *Abbasi*, according to the panel, "reaffirmed that a *Bivens* remedy remains available to address violations

---

Bivens relief[]" and expressly found that this argument <u>cannot</u> be forfeited.  142 S. Ct. at 1807 n.3 (citation and internal quotation marks omitted).

9

of the Fourth Amendment involving unjustified, warrantless searches and seizures by line officers performing routine criminal law enforcement duties." *See* [ECF No. 49] at 12.  This conclusion directly contradicts the unmistakable holdings of *Abbasi* and *Egbert*, the Courts of Appeals that have applied those holdings, <u>and</u> recent published decisions of <u>this Court</u>.

Though *Abbasi* preserved a *Bivens* remedy "in the search-and-seizure context in which it arose," 582 U.S. at 1856, that context cannot reasonably be defined to encompass all "unjustified, warrantless searches and seizures by line officers performing routine criminal law enforcement duties."  A *Bivens* claim under the Fourth Amendment presents a new context whenever the case is "different in a meaningful way" from *Bivens*. *Id.* at 1859.  The "context" of *Bivens* was an alleged unlawful, warrantless entry into Bivens' home by federal narcotics agents, who arrested Bivens, threatened his family, searched his apartment from "stem to stern," and then brought him to the station for interrogation and a strip search. *Bivens*, 403 U.S. at 389.

The unlawful warrantless entry into a home is meaningfully different from an unlawfully prolonged traffic stop. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth

10

Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (citation and internal quotation marks omitted). Thus, "[w]hen it comes to the Fourth Amendment, the home is first among equals." *Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (citation and internal quotation marks omitted). The sanctity of the home is preserved by generally requiring police to obtain a warrant supported by probable cause before entering. *See Id.* at 2018. A routine traffic stop, by contrast, requires only reasonable articulable suspicion and no warrant. *See, e.g.*, *Navarette v. California*, 572 U.S. 393, 396 (2014). There is also a diminished expectation of privacy in cars that justified treating them "differently from houses as a constitutional matter." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). For this reason and others, no warrant is needed to search a car as long as police have probable cause. *Id.*

As this Court has said, "although *Bivens*, too, was a Fourth Amendment case, [c]ourts do not define a Bivens cause of action at the level of the Fourth Amendment or even at the level of the unreasonable-searches-and-seizures clause." *Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2022) (internal quotations omitted). Even "quite minor"

differences will suffice to create a new context under step one of *Abbasi*.
*Tun-Cos v. Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019).

Moreover, to the extent *Abbasi* left any doubt about the Supreme
Court's desire to limit *Bivens*, *Egbert* "all but closed the door on [new]
*Bivens* remedies," *Dyer*, 56 F.4d at 277, by holding that a *Bivens* remedy
will not lie if there is "any reason to think that Congress might be better
equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1798.
Notably, *Egbert* involved "almost parallel circumstances" to *Bivens* – a
warrantless entry onto the plaintiff's property and the use of excessive
force. *Id.* at 1805; *Mejia*, 61 F.4th at 667-68. But "these superficial
similarities" were "not enough to support the judicial creation of a cause
of action" because the incident occurred near the U.S.-Canada border,
which was reason enough to believe that any damages remedy was better
left for Congress. *Id.*

The Ninth Circuit in *Mejia* properly understood, and properly
applied, the limitations imposed by *Egbert*. The plaintiff in Mejia was a
passenger in an off-road vehicle on public land managed by the Bureau
of Land Management ("BLM"). During an attempted felony stop of the
vehicle, a BLM officer shot Mejia. *Id.* at 665. Although the issue on

12

appeal was qualified immunity, following *Egbert*, the Ninth Circuit *sua sponte* asked the parties to address whether Mejia had a cognizable *Bivens* claim, and ultimately held that she did not for two reasons. *Id.* at 668. First, Mejia did "not point to any reason to believe that most federal agencies have the same or similar legal mandates, or more to the point, that BLM has the same mandate as agencies enforcing federal anti-narcotics law." *Id.* at 668; *see also Egbert*, 142 S. Ct. at 1815 ("It is of course well established that a *Bivens* suit involving an entirely new category of defendants arises in a new context." (citation and internal quotation marks omitted)). Second, and "[m]ore importantly, unlike *Bivens*, none of the events in question occurred in or near Mejia's home." *Id.* Rather, "entire incident occurred on public lands . . . where Mejia had no expectation of privacy."

Here, as in *Mejia*, the alleged Fourth Amendment violation was committed by U.S. Park Police officers whose mandate was not "enforcing federal narcotics laws." And "[m]ore importantly," each encounter with Appellants occurred on a highway with Agent Hicks behind the wheel of his government vehicle, in which he had a diminished expectation of privacy, if any. And, throughout both encounters, Agent Hicks was not

arrested, nor searched, nor asked to leave the vehicle, which itself was never searched.

As such, while the panel gave brief acknowledgment to *Egbert*'s "any reason" test, *see* [ECF No. 49] at 11, it never applied it. Nor did it consider *Mejia*, which was specifically discussed during oral argument after the panel requested authority regarding courts finding a distinction between Fourth Amendment rights of privacy militating against extending a *Bivens* remedy. Nor did the panel heed this Court's own observation in *Dyer* that *Egbert* "all but closed the door on Bivens remedies." 56 F.4d at 277. Instead, the panel adopted its own misguided conclusion from *Hicks I* – a case decided before, and partially overruled by, *Egbert*, *see* note 3 *supra* – that this case was effectively a "replay" of *Bivens*. This case is plainly factually disparate from the facts seen in *Bivens*.

Indeed, the panel's lift of its "replay" language from *Hicks I*, and adopting it as the holding in this Opinion, underscores the fatal flaw in its analysis. The thrust of this aspect of *Hicks I* was the panel's conclusion that because Appellants raised the applicability of the *Abbasi* analysis on appeal of the district court's denial of summary judgment on

14

qualified immunity – couched by the panel as a "late-breaking argument", *Hicks I*, 965 F.3d at 309 – and because it did not qualify as "the kind of fundamental error that might warrant reversal on a ground not raised before the district court[,]" *Id.* at 311 (internal quotations and citations omitted), the Court's standard forfeiture rules precluded the Court from performing the *Abbasi* analysis itself. *Id.* at 311-12. But the panel nonetheless noted that "this case appears to represent not an extension of *Bivens* so much as a replay: just as in *Bivens*, [Agent] Hicks seeks to hold accountable linelevel [sic] agents of a federal criminal law enforcement agency, for violations of the Fourth Amendment, committed in the course of a routine law-enforcement action[,] [and] [i]ndeed, courts regularly apply *Bivens* to Fourth Amendment claims arising from police traffic stops like this one." *Id.* (internal citations omitted). But in making this assertion, the panel relied, in significant part, on a pre-*Abbasi* decision by this Court. *Id.* at 311-12. By adopting this analysis as the thrust of this Opinion's holding – all while bypassing *Egbert* – the panel applied pre-*Abbasi* analysis to post-*Egbert* jurisprudence – the very thing that the Supreme Court in *Abbasi*, *Hernandez*, and *Egbert* eradicated. The Opinion's conclusion that this case does not present *Bivens* in a new

15

context is factually, analytically, and legally untenable, and this Petition

should thus be granted.

> **B.    The Opinion's Erroneous Holding Is Compounded By The Panel's Failure To Review The Presence Of Any Special Favors Counseling Against Sustaining Agent Hicks' *Bivens* Remedy.**

Additionally, by incorrectly finding that Agent Hicks' claim did not

present a new *Bivens* context, it avoided any substantive discussion

regarding the presence of any special factors.  For example, "[i]f there are

alternative remedial structures in place, that alone, like any special

factor, is reason enough to limit the power of the Judiciary to infer a new

*Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804.  But the *Egbert* court

went further, emphasizing that courts now should consider the new

context and special factors prongs holistically, rather than linearly

proceeding to analyze special factors only after deciding, in isolation, that

a case presents a new context.  *See id.*, 142 S. Ct. at 1803 ("While our

cases describe two steps, those steps often resolve to a single question:

whether there is any reason to think that Congress might be better

equipped to create a damages remedy."); see also *id.* 1809 (Gorsuch, J.,

concurring) ("Today, the Court helpfully answers some of these lingering

questions. It recognizes that our two-step inquiry really boils down to a

16

'single question[.']").    Thus, this "single question" incorporates the considerations previously divided between the two factors discussed in *Abbasi*.

Although the Opinion dismissed Appellants' argument on this issue in a footnote – asserting that Appellants "fail to identify any alternative remedy available to [Agent] Hicks for the constitutional violations[,]" *see* [ECF No. 49] at 15 n.3 – the panel completely ignored what was discussed during oral argument and is evident in the record – Agent Hicks <u>second</u> cause of action arising under 42 U.S.C. § 1985, the stature proscribing "[c]onspiracy to <u>interfere with civil rights</u>." *Id.* (emphasis added).    Specifically, Count Two of Agent Hicks' First Amended Complaint alleged, pursuant to 42 U.S.C. § 1985(1), that Appellants "knowingly conspired to prevent [him] from discharging his federal duties by agreeing to act collectively to detain [him] without probable cause or reasonable suspicion." *See* J.A. 29.    Indeed, this cause of action – created by Congress – was uniquely available to Agent Hicks given that the incidents with Appellants occurred while he was an <u>on-duty</u> agent for the U.S. Secret Service.    Indeed, the undisputed fact that this claim arose out of incidents involving officers within different

17

agencies of the Executive Branch itself could constitute a special factor suggesting Congress (or the agencies themselves) would be better suited to address Agent Hicks' claim – something the Opinion dismissed with scant analysis.  *See* [ECF No. 49] at 11, 15.

Another special factor is when a court "likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*." *Egbert*, 142 S. Ct. at 1803 (quotations omitted).  Given the frequency of traffic stops, permitting damages actions whenever a stop arguably lasts too long could impair effective law enforcement and impose significant financial burdens on the government.  After all, "[a]s an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order." *Collins*, 138 S. Ct. at 1670 (citation and internal quotation marks omitted).  "That uncertainty alone is a special factor that forecloses relief." *Egbert*, 142 S. Ct. at 1804.

That uncertainly also underscores the exceptional importance of the question presented herein.  The Opinion dismissed as "meritless" any concern that its holding could create an onslaught of *Bivens* claims

arising out of welfare checks and/or *Terry* stops that last longer than the driver believes was necessary, stating that "[t]here is nothing in the record to support this speculation." *See* [ECF No. 49] at 16 n.3. However, this Opinion could easily cause apprehension amongst federal officers for fear of being subjected to future lawsuits seeking monetary damages. This principle was echoed in *Egbert* when it noted that "[r]ecognizing any new *Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.' " *Id.*, 142 S. Ct. at 1807 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

For all these reasons, this Court should thus adhere to, and apply, the correct jurisprudence for *Bivens* claims. The Opinion's holding is irreconcilable with this jurisprudence, and given its potential impact, constitutes a matter of exceptional importance for this Court to correct because, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert*, 142 S.Ct. at 1800.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing en banc.

Dated: April 12, 2023        Respectfully submitted,

/s/ *Edward P. Parent*

Andrew C. White
Edward P. Parent
Jodie E. Buchman
Todd W. Hesel
Pierce Murphy
SILVERMAN THOMPSON SLUTKIN WHITE LLC
400 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 385-2225
nparent@silvermanthompson.com

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing Petition for Rehearing En Banc Brief complies with the word limit of FED. R. APP. P. 35(a)(b)(2)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 3,880 words.

I FURTHER CERTIFY that foregoing Petition for Rehearing En Banc complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, in Century 14-point font.

/s/ *Edward P. Parent*
Edward P. Parent, Esq.
*Attorney for Defendants-Appellants*

## CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that on this 12th day of April 2023, I caused Defendants-Appellants' Petition for Rehearing En Banc to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record.

/s/ *Edward P. Parent*

Edward P. Parent, Esq.

*Attorney for Defendants-Appellants*

22